## CARVER v. COMMONWEALTH.

Court of Appeals of Kentucky.
March 20, 1953.

————◆————

Paul R. Huddleston, Bowling Green, for appellant.

J. D. Buckman, Jr., Atty. Gen. and Zeb A. Stewart, Asst. Atty. Gen., for appellee.

MOREMEN, Justice.

Appellant, Henry Carver, was convicted of voluntary manslaughter and sentenced to confinement in the penitentiary for a period of ten years. He killed James Hines.

Carver and Hines were tenant farmers and neighbors. They lived near Bowling Green. Appellant was about 53 years old and, according to his testimony, weighed about 150 pounds and was in poor health. The deceased was 26 years old, about 6 feet tall and weighed nearly 200 pounds. Appellant was known as a steady drinker and Hines drank occasionally. Neither had been in trouble before and each bore the reputation of being a good law-abiding citizen. Previous to the fatal day, the parties had had some "trouble" but it appears to have been little more than rather rough horseplay which had been initiated by Hines. However, on the afternoon of Saturday, November 17, 1951, their relationship was friendly. They each drank a bottle of beer in a poolroom in Bowling Green and left together about 4 or 4:30 p. m. Appellant testified that they then went to a garage to pick up his car and at the garage he noticed that Hines had been drinking more than he theretofore had thought he had. Nevertheless, they got into the car and started home. During the ride home, over a distance of about seven miles, Car-ver stated that Hines began to show more plainly that he was under the influence of alcohol. Hines opened a pocket knife and, in order to annoy appellant, occasionally jabbed him in the leg with it. When appellant reached his house, he stopped at his gate and requested that Hines go on home, but Hines would not answer him and he finally drove up to the house where he got out and was followed into his home. He then realized that Hines was drunk.

Carver testified that the following happened within the space of ten minutes:

"Well, I went on the opposite side of the stove from the door and he set down in front of the stove like this, and it actually happens so that he hit at me from this chair he was setting in and hit me on the left side of the nose which was sore for some time. And then he swung this chair and when he got his chair I was moving back then toward the kitchen and the first thing that I could get my hands on was that gun over the kitchen door. I brought this gun down and shot this first shot into the wall. He said, 'Well, you son of a bitch, I will get you now.' I guess he must have thought that was the only shell in it. To tell you the truth, I didn't even know the gun was loaded when I took it down. I thought I could use it otherwise. Then when I brought this gun down and fired the second shot, the second shot actually shot him. He was within reaching distance of the kitchen door and I was on this side of the kitchen door."

He further stated that when Hines struck him, "he hit me on the left side of the nose which is very sensitive any way because I have had part of that bone took out, it seemed to kinder addle me and I didn't hardly seem to realize what did happen after I was hit."

Appellant assigns as his principal ground for reversal the fact that the jury was not polled after the verdict was returned.

We will describe the circumstances surrounding this incident in the language used in the bill of exceptions:

"After approximately two hours of deliberation, the jury returned into open court with a verdict, which verdict was received and announced by the court in the presence of the defendant but in the absence of defendant's counsel. Said counsel, having been absent about five minutes during a visit to the washroom located on the same floor and immediately across the hall from the courtroom, returned to find that the verdict had been received and announced and the jury dismissed. Counsel immediately requested the court to poll the jury, but the court informed counsel that said motion came too late, that is after dismissal of the jury. And upon this ruling of the court and upon the announcement of the verdict during the temporary absence of defendant's counsel, the defendant objected and reserved exceptions."

■ This court has long recognized the importance of the constitutional right of the accused to be present with his counsel at all stages of a trial. In Temple v. Commonwealth, 14 Bush 769, 29 Am.Rep. 442, we said:

"The right to be heard by himself and counsel necessarily embraces the right to be present himself and to have a reasonable opportunity to have his counsel present also at every step in the progress of the trial. * * *. The presence of the accused is not mere form. It is of the very essence of a criminal trial not only that the accused shall be brought face to face with the witness against him, but also with his triers * * *. And at no time in the whole course of the trial is this right more valuable than at the final step when the jury are to pronounce that decision which is to restore him to the liberty of a citizen, or to consign him to the scaffold or to a felon's cell in the state prison * * *. The right to poll the jury in criminal causes has in this state always been deemed an essential part of the right of trial by jury. It is guaranteed by both the constitution and the statute, and ought

to be maintained and preserved by the courts as essential to the protection of the rights of the citizen * * *. It was the duty of the court to have him present when the verdict was received, and, in view of the time and circumstances, to have caused notice to be given to his counsel that they might have an opportunity to be present."

In Boreing v. Beard, 226 Ky. 47, 10 S.W. 2d 447, 451, it was pointed out:

"The most substantial right of the accused in a felony case, incident to his constitutional privilege of being present when the verdict is returned, is the right to poll the jury and to require each member of the jury when face to face with the accused to state whether or not the verdict is his verdict."

It has been held that this right may be waived, Johnson v. Commonwealth, 308 Ky. 709, 215 S.W.2d 838, but we believe that no waiver was shown in this case.

In Tartar v. Commonwealth, 274 Ky. 109, 118 S.W.2d 190, 193, where the record disclosed that when the jury returned and announced they had reached a verdict, counsel for both parties were absent from the courtroom. The jury was *polled*. We held that no harm resulted from this procedure. But the court approved this quotation from 16 C.J., page 1178, § 2705:

"The absence of counsel for defendant when the jury render their verdict is not ground for a new trial unless the jury are not polled by reason of such absence, and the objection may be waived." See, also, 23 C.J.S., Criminal Law § 1450.

 Such a waiver should not be implied. We find nothing in the record which indicates a voluntary relinquishment of this right to require the jury to be polled. To the contrary, counsel on his return, after a very short absence, used every means to have the jury questioned.

We are of opinion that the court should have granted a new trial.

Appellant has raised a number of questions concerning various rulings of the

court and other happenings at the trial which we will not discuss here because they are not likely to recur at a future trial. However, all errors urged as grounds for reversal not here decided, are reserved.

Judgment reversed with directions that appellant be granted a new trial.