JUAN JACA HERNÁNDEZ, Petitioner, *v.* GERARDO DELGADO, WARDEN OF THE STATE PENITENTIARY, Respondent.

No. 931.  Resubmitted March 28, 1961.—Decided April 13, 1961.

*P. Amadeo, Gerardo Ortiz* and *Francisco García Quiñones* for petitioner. *Arturo Estrella, Acting Attorney General,* for respondent, and *Gabriel de la Haba,* as amicus curiae.

MR. JUSTICE BLANCO LUGO delivered the opinion of the Court.

Juan Jaca Hernández and others were charged with murder in the first degree (in four cases) and with assault with intent to commit murder (in six cases). Having been tried before the Superior Court of Puerto Rico, they were found guilty by the jury which sat at the trial. The petitioner was sentenced on June 5, 1951 to serve four sentences of life imprisonment and six indeterminate sentences of six to fourteen years imprisonment. Petitioner filed an appeal and this Court affirmed the sentences imposed on Jaca.[1] *People* v. *Hernández,* 77 P.R.R. 437 (1954).

By means of a petition of habeas corpus filed before this Court, the petitioner now collaterally challenges the sentences imposed on him, on seven grounds which may be summarized as follows: (a) the verdicts rendered against petitioner are void because they were not rendered by three-fourths of the jury members who tried him, as according to the information of the foreman it had been agreed upon by the majority, and besides, it was not reported how many jurors had concurred in said verdicts; (b) the verdicts rendered are void because they are in conflict with the Sixth Amendment of the Constitution of the United States, which guarantees the right to

---

[1] In the appeal filed by petitioner he assigned the commission of the following errors by the trial court: (1) in deciding that it had jurisdiction to entertain the case of the defendants-appellants, in assuming jurisdiction over the same, and in holding a trial where judgments of conviction were produced and sentences of imprisonment were imposed in the absence of jurisdiction; (2) in not permitting counsel for the defense to inquire about other facts related to the revolutionary events of October 30; (3) in failing to instruct the jury that if it had doubt as to whether defendants were guilty of murder in the first or second degree, it must resolve this doubt in their favor and find them guilty of a lower degree offense; (4) in the manner whereby it instructed the jury about the summary of the evidence, and (5) in convicting and sentencing each and every one of the defendants to indeterminate sentences in the penitentiary.

trial by jury and requires that the verdict be unanimous, since said clause was in force in Puerto Rico at the time of the prosecution of the defendant, and therefore, was applicable to an unincorporated territory such as Puerto Rico was at that time; and they are void, also, because they are in conflict with the Fifth Amendment of the Constitution of the United States and § 2, subd. 3 of the Jones Organic Act of 1917, since a verdict rendered not unanimously precludes the conviction from being beyond any reasonable doubt and weakens the presumption of innocence; and (c) the verdicts rendered are void because they are in conflict with the due process of law clause of the Fifth Amendment of the Constitution of the United States, Article I, § 9, paragraph 3 of said Constitution, and § 2, subdvs. 3 and 8 of the Jones Organic Act of 1917, because by virtue of Act No. 7 of December 29, 1950, defendant was estopped from polling the jury, and besides, because this Act is ex post facto in its application to the case of the petitioner, who committed the criminal acts with which he is charged on a date previous to its enactment and while § 290 of the Code of Criminal Procedure, as amended by Act No. 11 of August 19, 1948, prevailed, which allowed the defendant "the substantial procedural right" to poll the jury.

We issued a writ of habeas corpus addressed to the defendant.[2] The parties and the amicus curiae appeared at the hearing held, and after having been heard the petition was submitted for decision. We shall discuss the grounds of the petition in the order previously stated.

[2] Even though all the questions now raised by petitioner could have been discussed in the appeal filed by him, and in view of the aforementioned constitutional principles, we issued the writ because it was a case of an exceptional character. *Chamberlain* v. *Delgado, Warden,* ante, p. 6; *Sunal* v. *Large,* 332 U.S. 174 (1947); *Baender* v. *Barnett,* 255 U.S. 224 (1921); *Re Gregory,* 219 U.S. 210 (1911); *Re Heff,* 197 U.S. 488 (1905); *Re Coy,* 127 U.S. 731 (1888); cf. Habeas Corpus—*Exhaustion of Remedies Held to Require Timely Appeal,* 97 U. Pa. L. Rev. 285 (1948); Habeas Corpus—*Use as a Remedy Where the Appeal Process has Been Exhausted,* 46 Mich. L. Rev. 570 (1948).

## I

In order to dispose of the ground adduced by petitioner, we must refer to the incidents of the prosecution concerning the verdict of the jury and the acceptance thereof by the trial court. From the transcript of the evidence appearing in the record on appeal we copy the following, at pp. 217–218:

JUDGE: Do the parties agree that the jury is complete and that it is the same?

DEFENSE: Yes, Your Honor.

PROSECUTING ATTORNEY: Yes, Your Honor.

JUDGE: Have you reached a verdict?

FOREMAN: Yes, Your Honor.

JUDGE: Gentlemen of the Jury, is this the verdict of the jury?

ALL THE GENTLEMEN OF THE JURY ANSWER: Yes, sir.

JUDGE: By a majority?

FOREMAN: *Yes, Your Honor, by a majority. . . .*" (Italics ours.)

On pages 224 and 225 the following dialogue between the presiding judge and the foreman of the jury appears:

"JUDGE: . . . Gentlemen of the Jury, what was the proportion of the majority by which these verdicts were rendered?

FOREMAN: Ten against two, Your Honor.

JUDGE: Ten guilty and two not guilty?

FOREMAN: Yes, Your Honor.

JUDGE: Gentlemen of the jury, you may withdraw."

Pursuant to § 282 of the Code of Criminal Procedure, as amended by Act No. 11 of August 19, 1948 (Sp. Sess. Laws, p. 212, 34 L.P.R.A. § 813), "when the jury appear, they must be asked by the court, or clerk, whether such is the verdict of the jury and the number of jurors concurring in said verdict. If the foreman answers that such is the verdict of the jury, and if the said verdict conforms to the law, it shall be accepted by the court." From the transcribed incident it clearly appears that in the prosecution

to which the defendant was submitted, the statutory provisions copied above as to the manner of rendering the verdict,[3] were strictly complied with.

## II

The right of a defendant to receive a unanimous verdict from the jury instead of by three-fourths of its members, as provided by the local law, is once more raised on the ground that the Sixth Amendment of the Federal Constitution was in force in Puerto Rico at the time of the commission of the offense and the trial of defendant, and, furthermore, that a verdict rendered by a majority vote destroys the presumption of innocence of the defendant and precludes a conviction beyond a reasonable doubt. These same contentions were considered by this Court in *Fournier* v. *Warden*, 80 P.R.R. 254 (1958), and in a lengthy opinion of Mr. Justice Saldaña, it was stated at pp. 258 to 260:

"Nor can we accept the appellant's contention that because of the fact that he was found guilty by a jury verdict which was not unanimous, that is, in which only more than nine jurors concurred, his rights under the Federal Constitution were violated. In the federal court, where the VIth and VIIth Amendments to the Constitution of the United States are applicable, the verdict of a jury of twelve in a criminal case must be unanimous. *American Publishing Co.* v. *Fisher*, 166 U.S. 464; *Andrés* v. *United States*, 333 U.S. 740. However, said Amendments are not applicable to the states or to Puerto Rico. *Walker* v. *Sauvinet*, 92 U.S. 90; *Maxwell* v. *Dow*, 176 U.S. 581; *Balzac* v. *Puerto Rico*, 258 U.S. 298. In order to decide this case, we do not have to go into the question of whether the due process clause of the Vth Amendment or that of the XIVth Amendment is applicable to Puerto Rico. *Cf. Mora* v. *Mejías*, 206 F.2d 377, 382 (C.A. 1, 1953); *Stagg, Mather and Hough* v. *Descartes*, 244 F.2d 578, 583 (C.A. 1, 1957). The XIVth Amendment protects only the fundamental rights of an accused to enjoy a

---

[3] At the hearing, petitioner's counsel desisted from this assignment because he did not know about this last part of the transcript. However, we pointed out that we would dispose of the matter at the time of rendering judgment.

fair and impartial trial, but does not require either trial by jury or a unanimous verdict as a method of imparting justice in criminal cases. Thus, in *Maxwell v. Dow, supra,* the Supreme Court of the United States held that the due process of law of the XIVth Amendment did not include the right to a grand jury indictment, nor the right to a jury trial. The Court announced the fundamental doctrine that the states were at liberty to determine the rules of procedure in criminal cases including the question as to '. . . whether there shall be a jury of twelve or a lesser number and *whether the verdict must be unanimous or not.'* (At 605.) (Italics ours.) It added that these matters have no relation with the character of the Federal Government and that a state has absolute control over the proceedings in its courts, in civil as well as in criminal cases, with the only exception that said proceedings cannot violate fundamental rights or be in conflict with specific provisions of the Federal Constitution which are applicable. The doctrine that the due process of law of the XIVth Amendment does not impose limitations on the states with respect to mere forms of procedure in civil or criminal cases was reaffirmed in *Jordan v. Massachusetts,* 225 U.S. 167, 176, specifically stating the following: 'In criminal cases due process of law is not denied by a state law which dispenses with a grand jury indictment . . . nor by a law which dispenses with the necessity of a jury of twelve, *or unanimity in the verdict.'* (At 196.) (Italics ours.) This constitutional doctrine has been sustained without any departure until the present time. See *Brown v. New Jersey,* 175 U.S. 172; *Twining v. New Jersey,* 211 U.S. 78; *Snyder v. Massachusetts,* 291 U.S. 97; *Palko v. Connecticut,* 302 U.S. 319; *Adamson v. California,* 332 U.S. 46; *Rochin v. California,* 342 U.S. 165; *Breithaupt v. Abram,* 352 U.S. 432. With reference to the due process clause of the Vth Amendment, before the enactment of Act 600 (64 Stat. 319) and of the Constitution of the Commonwealth of Puerto Rico, the right to jury trial, including unanimity of verdict in criminal cases, was not protected either by the Organic Act of 1917 or by the Federal Constitution. *Hawaii v. Mankichi,* 190 U.S. 197; *Balzac v. Puerto Rico, supra.* It would be absurd to contend that, after the enactment of Act 600, the Vth Amendment requires a trial by jury in the criminal cases prosecuted in Puerto Rican courts and also an unanimous verdict. The purpose of Act 600 was

precisely to enlarge and not to restrict the powers and the autonomy of Puerto Rico over its internal matters. *Cf. Figueroa* v. *People of Puerto Rico,* 232 F.2d 615 (C.A. 1, 1956)."

The judgment rendered in the afore-mentioned case was affirmed by the First Circuit Court of Appeals, *Fournier* v. *González,* 269 F.2d 26 (1959), and in the opinion rendered it was stated at p. 28:

"So far as concerns the guaranty of Art. III, § 2, and that of the Sixth Amendment of the Federal Constitution, it is clear that we could not hold that they are applicable to the present situation without a determination that Balzac v. People of Porto Rico, 1922, 258 U.S. 298, 42 S.Ct. 343, 66 L.Ed. 627, is no longer law; and certainly Reid v. Covert, 1957, 354 U.S. 1, 77 S.Ct. 1222, 1 L.Ed. 1148, did not overrule Balzac v. People of Porto Rico. We cannot even find, upon an attentive reading of the opinions in Reid v. Covert, that a majority of the justices raised any question as to the continuing applicability of the Balzac case and of Territory of Hawaii v. Mankichi, 1903, 190 U.S. 197, 23 S.Ct. 787, 47 L.Ed. 1016, in the circumstances of the present case."

However, relying on certain language contained in the opinion delivered by Mr. Justice Black in the *Reid* case, upon referring to Insular Cases, petitioner's counsel as well as the amicus curiae, urge us to decide in effect, that Puerto Rico was an incorporated territory of the United States when the crime was committed and at the time of the prosecution of the petitioner. The portion of the opinion to which they refer is as follows (p. 13):

" . . . The 'Insular Cases,' which arose at the turn of the century, involved territories which had only recently been conquered or acquired by the United States. These territories, governed and regulated by Congress under Art. IV, § 3, had entirely different cultures and customs from those of this country. This Court, although closely divided, ruled that certain constitutional safeguards were not applicable to these territories since they had not been 'expressly or impliedly incorporated' into the Union *by Congress.* While conceding that 'fundamental' constitutional rights applied everywhere, the majority found

that it would disrupt long-established practices and would be inexpedient to require a jury trial after an indictment by a grand jury in the insular possessions.

"The 'Insular Cases' can be distinguished from the present cases in that they involved the power of Congress to provide rules and regulations to govern temporarily territories with wholly dissimilar traditions and institutions whereas here the basis for governmental power is American citizenship."

At the hearing it was implied that the reasons stated in the *Reid* case—differences in culture and customs, dissimilar traditions and institutions—have disappeared. Since it is unnecessary for the purpose of deciding the question raised, in view of our ruling and of the First Circuit Court of Appeals in the *Fournier* case, we shall reserve our judgment on this matter for a more favorable occasion. It goes without saying that in our opinion the doctrine held in the *Balzac* case was not overruled by the *Reid* case and that the reference made to the exercise of jurisdiction by virtue of the American citizenship, is not an expression to be interpreted out of its context and separate from the facts of the case, that is, from the commission of crimes by American citizens in bases of the United States Army situated in two foreign countries Japan and England. We have carefully considered the contentions of the amicus curiae and we have found nothing to lead us to forsake our position in the *Fournier* case.[4]

---

[4] Corwin, *The Constitution and What It Means Today* (Princeton University Press, 1958 Ed., states at p. 173:

"And while the United States may, through the treaty-making power acquire territory, its incorporation in the United States ordinarily waits upon action by Congress. Such incorporation may be affected either by admitting the territory into 'this Union' as new States or, less completely, by extending the Constitution to it. Until territory is thus incorporated into the United States, persons born therein are not citizens of the United States under the Fourteenth Amendment, though Congress may admit them to citizenship, as in fact it has done in several instances (see pp. 55–57); and the power of Congress in legislating for such unincorporated territory is limited only by 'fundamental rights' of the individual, of which trial by jury is not one. Incorporation, however, makes the inhabitants of territories citizens of the United States, and extends to them full protection of the Constitution. Alaska is an 'incorporated' territory

## III

■■ Finally, the petitioner alleges that the verdicts rendered are void because they are in conflict with the clause of due process of law of the Fifth Amendment of the Constitution of the United States, Article I, § 9, paragraph 3 of said Constitution, and § 2, subds. 3 and 8 of the Jones Organic Act, because by virtue of Act No. 7 of December 29, 1950, the defendant was estopped from polling the jury. Besides, he maintains that insofar as his case is concerned, the application of the afore-mentioned Act is ex post facto, since at the time of the commission of the crime, another version of § 290 of the Code of Criminal Procedure prevailed, whereby he was allowed such polling which he qualifies as a "substantial procedural right."

Originally, § 290 of the Code of Criminal Procedure, provided that:

"When a verdict is rendered, and before it is recorded, the jury may be polled at the request of either party, in which case they must be severally asked whether it is their verdict, and if any one answer in the negative the jury must be sent out for further deliberation."

When the verdict by concurrence of not less than three-fourths of the jury instead of a unanimous verdict by all the members of the jury was adopted, said section was amended by Act No. 11 of August 19, 1948 (Sp. Sess. Laws, p. 212) to conform it to the new system and to the phrase "and if any one answer in the negative" which was replaced by "and if it is not the verdict of at least three-fourths of the jury." The law thus prevailed on October 30, 1950—date of the commission of the crimes for which the defendant was tried and convicted.

Before the holding of the trial wherein Jaca was found

in this nomenclature; Samoa, Guam, Wake, etc. are probably 'unincorporated'; while recently a new category has appeared, with the elevation of Puerto Rico to the status of 'commonwealth'—an experiment decidedly worth study."

guilty, said section was amended by Act No. 7 of December 29, 1950 (Spec. Sess. Laws, p. 386; 34 L.P.R.A. § 821), and all reference made to the polling of the jury was eliminated. It actually reads as follows:

"When the verdict given is such as the court may receive, the Clerk must immediately record it in full upon the minutes, read it aloud and inquire of the foreman if it is the verdict of the jury, and how many of the jurors concurred in said verdict. If the foreman answers that it is the verdict of the jury and that said verdict conforms to the law, it shall be accepted by the court, the verdict shall be considered complete, and the jury must be discharged."

The polling of the jury has its origin in the common law. This institution of procedural law is specifically attributed to Mr. Mathew Hale, when in his work *History of the Pleas of the Crown*, he said: "Now touching the giving up of their verdict, if the jury say they are agreed, the court may examine them by poll, and if in truth they are not agreed, they are finable." [5] The purpose to be served by polling the individual vote of each juror is to eliminate any doubt as to the verdict given,[6] and to give any juror, who may possibly have been under pressure or fears when deliberating privately, an opportunity to speak out and announce his decision.[7] It has also been justified (a) as part of the requirement that there be unanimous concurrence in the verdict rendered;[8] (b) as a right incident of defendant to be present when verdict is rendered;[9] (c) as a means to obviate any

---

[5] In the Spanish version it is copied in English.

[6] *State* v. *Brown*, 168 N.E.2d 419 (Ohio 1953); *State* v. *Cleveland*, 78 A.2d 560 (N.J. 1951).

[7] *Com. ex rel. Ryan* v. *Banmiller*, 162 A.2d 354 (Pa. 1960); *Solar* v. *United States*, 86 A.2d 538 (D.C. 1952); *State* v. *Schmelz*, 111 A.2d 50 (N.J. 1955); *Commonwealth* v. *Martin*, 109 A.2d 325 (Pa. 1954), where reference is made to the possibility that the verdict resulted from sheer mental and physical exhaustion due to prolonged proceedings.

[8] *State* v. *Smith*, 142 A.2d 890 (N.J. 1958); *State* v. *Vaszorich*, 98 A.2d 299, 313 (N.J. 1953); *Ryan* v. *People*, 114 Pac. 306 (Colo. 1911).

[9] *Carver* v. *Commonwealth*, 256 S.W.2d 375 (Ky. 1953); *Johnson* v. *Commonwealth*, 215 S.W.2d 838 (Ky. 1948); *State* v. *Waymire et al.*, 97 Pac. 46, 48 (Ore. 1908).

confusion and errors in verdicts, especially in jurisdictions where the jury may advise as to the punishment which may be imposed in case of conviction;[10] and (d) as a guarantee for defendant in those cases wherein sealed verdicts are allowed to all the members of the jury.[11] A similar justification has been stated for the polling of the jury in civil cases.[11a]

There are three different practices or rules regarding the polling of the jury when requested by the defendant in a criminal prosecution: (1) that defendant is entitled to poll, as of right; (2) that the allowance of such a request is discretionary with the court; and (3) that polling is not permissible.[12] The rule which prevails in the majority of the states is to the effect that if the statute [13] grants the

---

[10] *Bridges* v. *State*, 122 So. 533 (Miss. 1929).

[11] *State* v. *Simon*, 120 S.E. 230, 232 (S.C. 1923); *Stewart* v. *The People*, 9 Am. Rep. 78 (Mich. 1871); *State* v. *Callahan*, 7 N.W. 603 (Ia. 1880).

[11a] Annotation, *Polling Jury in Civil Case*, 71 A.L.R.2d 640 (1960); *Polling Jury in Civil Cases in Pennsylvania*, 30 Temple L.Q. 351 (1957).

[12] See, Annotation, *Accused Right to Poll of Jury*, 49 A.L.R.2d 619 (1956).

[13] Rule 31(*d*) of the Rules of Criminal Procedure (Fed. Rules Cr. Proc., Rule 31(*d*), 18 U.S.C.A.), which governs the procedure in criminal cases in federal courts, allows the polling of the jury. It provides that: "When a verdict is returned and before it is recorded the jury shall be polled at the request of any party or upon the court's own motion. If upon the poll there is not unanimous concurrence, the jury may be directed to retire for further deliberations or may be discharged."

Twenty-four states have specific statutory provisions on the poll of jury: Ark. Stat. Ann. 1947, § 43–2160; Ariz. Code Ann. 1939, § 44–1912; Deering Cal. Penal Code 1941, § 1163; Dela. Rules of Crim. Proc., Rule 31(D); Fla. Stat. Ann. 1941, § 919.10; Ida. Code Ann. 1946, § 19–2316; Burns Ind. Stat. Ann. 1933, § 9–1811; Iowa Code Ann. 1946, § 785.15; Carroll's Ky. Crim. Code of Prac. 1948, § 267; La. Rev. Stat. 1950, § 15.416; Minn. Stat. Ann. 1943, § 631.16; Mo. Rules of Crim. Proc. 27.01(*e*); Mont. Rev. Code 1947, 631.16; Mont. Rev. Code 1947, § 94.7416; Neb. Rev. Stat. 1943, § 29–2024; Nev. Comp. Laws 1929, § 11021; N. J. Court Rules, Rule 2:7–9(*d*); McKinney Consol. Laws N. Y. Penal Code, § 450; N.D. Rev. Code 1943, § 29–2213; Page's Ohio Gen. Code 1938, § 13448.5; Okla. Stat. Ann. 1936, § 22.921; Ore. Stat. 1941, Ch. 22, § 921; Vernon Tex. Code Crim. Proc. 1925, Art. 691; Utah Code Ann. 1953, § 77–33–10; Wyo. Com. Stats. 1945, § 10–1401. (These citations have been

defendant the right to request the poll, a petition *timely* presented by him should not be denied. In these states, where the right is sanctioned by statutes, it constitutes a substantial right and refusal to grant the same constitutes a reversible error. *Carver* v. *Commonwealth*, 256 S.W.2d 375 (Ky. 1953). The same rule prevails in the federal jurisdiction. *Miranda* v. *United States*, 255 F.2d 9 (C.C.A. 1, 1958); *Mackett* v. *United States*, 90 F.2d 462 (7th Cir. 1937).

Now, there does not seem to be any divergence of opinion as to whether the polling of the jury may be waived by the defendant, and that this waiver may be implied from his failure to make a timely request of the polling of the juror. In *State* v. *Vaszorich*, 98 A.2d 299, 314 (N.J. 1953), it is stated that although this is the right of the accused, it is not a necessary ingredient of his conviction, but must be requested by timely request. *State* v. *Dow*, 99 S.E.2d 860 (N.C. 1957); *Commonwealth* v. *Cano*, 128 A.2d 358 (Pa. 1957); *People* v. *Allgood*, 156 N.Y.S.2d 791 (1956). The appropriate moment to make the request is after the verdict has been rendered and before judgment has been pronounced. *State* v. *Vaszorich, supra; State* v. *Blisak*, 58 A.2d 711 (N.J. 1948); *State* v. *Cephus*, 86 S.E.2d 70 (N.C. 1955); *United States* v. *Dye*, 61 F. Supp. 457 (D.C. Ky. 1945); *Wooten* v. *State*, 92 S.E. 233 (Ga. 1917); *Watts* v. *Commonwealth*, 106 S.E. 339 (Va. 1921). Hence, it has been decided in some cases that the right of defendant has been violated when the verdict is received and recorded in the absence of defendant and his counsel. *Carver* v. *Commonwealth*, 256 S.W.2d 375 (Ky. 1953); *Allen* v. *State*, 70 So. 2d 644 (Ala. 1954); *cf. Clemens* v. *State*, 185 N.W. 209, 217 (Wis. 1921); *State* v. *Waymire et al.*, 97 Pac. 46, 48 (Ore. 1908); *Hommer* v. *State*, 37 Atl. 26 (Md. 1897); *State* v. *Gorman*, 129 N.W.

taken from the two sections mentioned hereinafter in footnote 17, and complemented by our study of the cases insofar as it refers to the states of New Jersey, Missouri, and Delaware).

589 (Minn. 1911); *Summeralls* v. *State*, 20 So. 242 (Fla. 1896). In *State* v. *Simon*, 120 S.E. 230 (S.C. 1923), a sealed verdict was received and defendant did not request that each member of the jury be polled. It was held on appeal that no ground exists for imputing a reversible error as to a matter not timely taken and upon which no ruling was made.

In the present case, and assuming that defendant had the right to the polling of the jury because the law which prevailed at the time of the crime was applicable, no request whatsoever was made to this effect, as required by § 290 ("at the request of either party"). If he had any right, the same should be considered waived. The position he now assumes that it was not requested because the judge would have denied it anyway, is to speculate as to what the presiding judge might have done with the request. The court may not decide such matters on the basis of mere speculations.[14]

In view of the foregoing conclusion we do not find it necessary to decide whether Act No. 7 of December 29, 1950 is unconstitutional in its application to defendant, because of its being ex post facto,[15] or because it eliminated defend-

---

[14] The cases of *Fernández* v. *Rivera, Warden,* 70 P.R.R. 859 (1950) and *People* v. *López,* 70 P.R.R. 753 (1950), which petitioner invokes in order to maintain that defendant was not obliged to make the contention before the trial court, are distinguishable. In the *Fernández* case, defendant *timely* requested that the court grant him, before imposing a sentence, the benefit of a suspended sentence, which it refused to do because in its opinion an amendatory Act enacted after commission of the offense by defendant precluding it from so doing; in the *López* case it clearly appears from the record that the judgment of conviction had not been rendered unanimously, notwithstanding which the court accepted it and sentenced defendant, and besides, as stated in said opinion at p. 755, "the right to the same jury vote required when the offense was committed is a constitutional right under the *ex post facto* clause which cannot be waived."

[15] In order that such an allegation may prevail, it is necessary to demonstrate that the law has altered the situation of the accused to his disadvantage "in its relation to the offense, or its consequences." *Thompson* v. *Utah,* 170 U.S. 343 (1898), since obviously it is not one of the four classes of *ex post facto* laws which appear in *Calder* v. *Bull,* 3 Dall. 386 (1798): (1) every law that makes an action which was innocent when done, criminal; and punishes such action; (2) every law that aggravates

ant's right to poll the jury, considering said right, as it was alleged, a substantial part of the due process of law guaranteed by the Sixth [16] and Fourteenth Amendments.[17]

For the reasons stated the petition for habeas corpus will be denied.

a crime, or makes it greater than it was when committed; (3) every law that changes the punishment, and inflicts a greater punishment, than the law annexed to the crime, when committed; and (4) every law that alters the legal rules of evidence, and receives less, or different testimony, than the law required at the time of the commission of the offense, in order to convict the offender.

[16] The polling of the jury is a right incident to a trial by jury, which as we have held, is not locally guaranteed by the Sixth Amendment of the Constitution of the United States.   See discussion thereof in part II of this opinion.

[17] See *Fournier* v. *Warden*, 80 P.R.R. 254 (1958), 269 F.2d 26 (1959). In the only case in the United States where the same contention was made, it was held that any right to poll the jury was not an element of due process guaranteed by the Fourteenth Amendment.   *Voss* v. *Tennessee*, decided in 1954 by the Supreme Court of Tennessee, and appearing in the preliminary edition of 270 S.W.2d 644.   However, the case is not published in the bound edition of said volume.   We have taken the reference thereto from an article entitled *Whether Defendant Possesses an Inviolate Right to Poll Jury Following Return of Verdict*, 33 Chicago-Kent L.R. 361 (1955). See, also, *Defendant's Right to Poll the Jury in Criminal Cases*, 6 DePaul L.R. 92 (1956).