JUAN JACA HERNÁNDEZ, peticionario, *v.* GERARDO DELGADO, JEFE DE LA PENITENCIARÍA ESTADUAL, demandado.

Número 931.

*Reasignado:* 28 de marzo de 1961.  *Resuelto:* 13 de abril de 1961.

*Santos P. Amadeo, Gerardo Ortiz y Francisco García Quiñones,* abogados del peticionario; *Arturo Estrella, Procurador General Interino,* abogado del demandado, y *Gabriel de la Haba,* como *amicus curiæ.*

EL JUEZ ASOCIADO SEÑOR BLANCO LUGO emitió la opinión del Tribunal.

Juan Jaca Hernández y otros fueron acusados de asesinato en primer grado (cuatro casos) y de ataque para cometer asesinato (seis casos). Juzgados ante el Tribunal Superior de Puerto Rico se les declaró culpables por el jurado que entendió en el proceso. Al peticionario se le condenó en 5 de junio de 1951 a cumplir cuatro penas de reclusión perpetua y seis penas indeterminadas de 6 a 14 años. Entabló recurso de apelación, y este Tribunal confirmó las sentencias impuestas a Jaca.([1]) *Pueblo* v. *Hernández*, 77 D.P.R. 464 (1954).

Mediante un recurso de hábeas corpus presentado ante este Tribunal, el peticionario impugna ahora colateralmente las sentencias que le fueron impuestas, por siete fundamentos que pueden resumirse en la siguiente forma: *a*) los veredictos rendidos contra el peticionario son nulos por no haber sido dictados por tres cuartas partes de los miembros del jurado que le juzgó, ya que se informó por el presidente que habían sido acordados por mayoría, y además, no se informó cuántos jurados habían concurrido en dichos veredictos; *b*) los veredictos rendidos son nulos por estar en conflicto con la Enmienda Sexta de la Constitución de Estados Unidos que garantiza el derecho a juicio por jurado y requiere que el veredicto sea unánime, ya que dicha cláusula estaba

---

([1]) En el recurso de apelación entablado por el peticionario señaló la comisión por el tribunal inferior de los siguientes errores: 1) al resolver que tenía jurisdicción para entender en el caso de los acusados apelantes, al asumir jurisdicción sobre el mismo y celebrar un proceso en el que se produjeron veredictos condenatorios y recayeron sentencias de presidio en ausencia de jurisdicción; 2) al no permitir a la defensa que investigara otros hechos relacionados con los sucesos revolucionarios del 30 de octubre; 3) al no trasmitir al jurado la instrucción de que en caso de que tuviesen duda de si los acusados habían cometido asesinatos en primer o segundo grado, deberían resolver tal duda a favor de ellos, y declararlos culpables del delito más bajo; 4) por la forma en que trasmitió al jurado el resumen de la evidencia; y, 5) al declarar convictos y sentenciar a indeterminadas penas de presidio a todos y cada uno de los acusados.

vigente en Puerto Rico a la fecha del proceso del acusado, y por tanto, aplicable a un territorio no incorporado como lo era Puerto Rico en dicha fecha; y porque además, son nulos por estar en conflicto con la Enmienda Quinta de la Constitución Federal y el Artículo II, Sección 3 del Acta Orgánica Jones de 1917, ya que un veredicto por menos de la unanimidad de los miembros del jurado impide que la convicción sea más allá de toda duda razonable y debilita la presunción de inocencia; y c) los veredictos rendidos son nulos por estar en conflicto con la cláusula del debido proceso de ley de la Enmienda Quinta de la Constitución Federal, el Artículo 1, Sección 9, inciso 3 de dicha Constitución y el Artículo II, Secciones 3 y 8 del Acta Orgánica Jones de 1917, porque en virtud de la Ley Núm. 7 de 29 de diciembre de 1950 el acusado estaba impedido de tomar el voto de los miembros del jurado (polling of the jury), y resultar además dicha ley *ex post facto* en su aplicación al caso del peticionario quien cometió los actos que se le imputan como delito en una fecha anterior a su aprobación, y mientras regía el artículo 290 del Código de Enjuiciamiento Criminal, según enmendado por la Ley Núm. 11 de 19 de agosto de 1948, que permitía al acusado "el derecho procesal substancial" de tomar el voto del jurado.

Expedimos mandamiento de hábeas corpus dirigido al demandado.([2]) Comparecieron las partes y el *amicus curiæ* a la vista celebrada, y después de oirles, el recurso quedó sometido para resolución. Discutiremos los fundamentos de la petición en el orden expuesto anteriormente.

---

([2]) Aun cuando todas las cuestiones que ahora levanta el peticionario pudieron haberse discutido en el recurso de apelación por él proseguido, y en vista de los fundamentos constitucionales expuestos, expedimos el auto por tratarse de circunstancias extraordinarias. *Chamberlain* v. *Delgado*, ante, pág. 6 (resuelto en 21 de marzo de 1961); *Sunal* v. *Large*, 332 U.S. 174 (1947); *Baender* v. *Barnett*, 255 U.S. 224 (1921); *Re Gregory*, 219 U.S. 210 (1911); *Re Heff*, 197 U.S. 488 (1905); *Re Coy*, 127 U.S. 731 (1888), cf. *Habeas Corpus—Exhaustion of Remedies Held to Require Timely Appeal*, 1948, 97 U. Pa. L. Rev. 285; *Habeas Corpus—Use as a Remedy Where the Appeal Process has Been Exhausted*, 1948, 46 Mich. L. Rev. 570.

## I

■ A los fines de disponer del primer fundamento adu-
cido por el peticionario es preciso que hagamos referencia a
las incidencias del proceso relacionadas con el veredicto del
jurado y su aceptación por el tribunal sentenciador. De la
transcripción de evidencia que consta en los autos del recurso
de apelación, copiamos (págs. 217–218):

"Hon. Juez: —¿Aceptan las partes que el jurado está com-
pleto y es el mismo?

Defensa: —Sí, Sr. Juez.

Fiscal: —Sí, Sr. Juez.

Hon. Juez: —¿Llegaron a un acuerdo?

Sr. Presidente: —Sí, Sr. Juez.

Hon. Juez: —Señores del Jurado, ¿este es el veredicto de
ustedes?

*Todos los señores Jurados contestan:* —Sí, señor. . .

Hon. Juez: —¿Por mayoría?

Sr. Presidente: —*Sí, Sr. Juez, por mayoría.*

.     .     .     .     .     ." (Énfasis suplido.)

A las páginas 224 y 225 aparece el siguiente diálogo
entre el magistrado que presidía y el presidente del jurado:

"Hon. Juez: — . . . Señores del Jurado, ¿la mayoría por
la cual ustedes rindieron estos veredictos fue en qué proporción?

Sr. Presidente: —10 contra 2, Sr. Juez.

Hon. Juez: —¿10 de culpabilidad y 2 de no culpables?

Sr. Presidente: —Sí, Sr. Juez.

Sr. Juez: —Los Señores del Jurado pueden retirarse."

De conformidad con el artículo 282 del Código de Enjui-
ciamiento Criminal, según enmendado por la Ley Núm. 11
de 19 de agosto de 1948 (Leyes, pág. 213, 34 L.P.R.A. sec.
813) "al volver el jurado a la sala, el tribunal, o secretario
del mismo, debe preguntar al que presida, si ése es el vere-
dicto del jurado y cuántos jurados concurren en el mismo.
Si el presidente responde que ése es el veredicto del jurado,
y dicho veredicto se ajusta a la ley, éste será aceptado por
la corte." Del incidente transcrito aparece claramente que

en el proceso a que se sometió al acusado se cumplió estrictamente con las disposiciones de la ley transcritas sobre el modo de rendir el veredicto. ([3])

## II

Nuevamente se nos plantea el derecho de un acusado a que el veredicto del jurado que le juzgue sea unánime, y no por tres cuartas partes de sus miembros como dispone la ley local, a base de que la Enmienda Sexta de la Constitución Federal estaba vigente en Puerto Rico para la fecha en que se cometieron los hechos y se juzgó al acusado, y que además, el veredicto por mayoría lesiona la presunción de inocencia que tiene el acusado e impide una convicción más allá de duda razonable. Idénticos planteamientos consideramos en *Fournier* v. *González*, 80 D.P.R. 262 (1958), y mediante una extensa opinión del Juez Saldaña se dijo a las páginas 267 a 269:

"Tampoco podemos aceptar la contención del apelante de que sus derechos al amparo de la Constitución Federal fueron violados al rendirse un veredicto de culpabilidad que no fue unánime, es decir, en que sólo concurrieron más de nueve jurados. En las cortes federales donde son aplicables las Enmiendas VI y VII de la Constitución de los Estados Unidos, el veredicto de un jurado de doce en un caso criminal debe ser unánime. *American Publishing Co.* v. *Fisher*, 166 U.S. 464; *Andres* v. *United States*, 333 U.S. 740. Sin embargo, dichas Enmiendas no son aplicables a los estados ni tampoco a Puerto Rico. *Walker* v. *Sauvinet*, 92 U.S. 90; *Maxwell* v. *Dow*, 176 U.S. 581; *Balzac* v. *Puerto Rico*, 258 U.S. 298. A los fines de este caso no es preciso resolver si en Puerto Rico se aplica la cláusula del debido proceso de ley de la Enmienda V o la de la Enmienda XIV. Cf. *Mora* v. *Mejías*, 206 F.2d 377, 382 (C.A. 1, 1953); *Stagg, Mather and Hough* v. *Descartes*, 244 F.2d 578, 583 (C.A. 1, 1957). La Enmienda XIV sólo protege los derechos fundamentales de un acusado a gozar de un juicio justo e impar-

([3]) En el acto de la vista, el abogado del peticionario desistió de este planteamiento, pues no tenía conocimiento de esta última parte de la transcripción. Sin embargo, indicamos que dispondríamos de la cuestión cuando se dictara sentencia.

cial pero no exige ni el juicio por jurado ni el veredicto unánime como método de impartir justicia en casos. criminales. Así pues, en *Maxwell* v. *Dow,* supra, la Corte Suprema de los Estados Unidos resolvió que el debido proceso de ley de la Enmienda XIV no incluía el derecho a acusación por gran jurado ni tampoco el derecho a juicio por jurado. La corte estableció la doctrina fundamental de que los estados estaban en libertad de determinar las reglas de procedimiento en los juicios criminales incluyendo la cuestión de '. . . si debe haber un jurado de doce o un jurado con menos miembros y *si el veredicto debe ser unánime o no.'* (Bastardillas nuestras.) (605). Añadió que estas cuestiones no guardan relación alguna con el carácter del Gobierno Federal y que un estado tiene absoluto control sobre los procedimientos en sus tribunales, tanto en casos civiles como en casos criminales, con la única limitación de que dichos procedimientos no pueden violar derechos fundamentales o estar en conflicto con disposiciones específicas de la Constitución Federal que sean aplicables. En *Jordan* v. *Massachusetts,* 225 U.S. 167, 176, se reafirmó la doctrina de que el debido proceso de ley de la Enmienda XIV no impone a los estados restricciones en cuanto a meras formas procesales en casos civiles o criminales, señalando específicamente lo siguiente: 'En casos criminales el debido proceso de ley no se deniega por una ley del estado que hace innecesaria la acusación por un gran jurado . . . , o por una ley que dispensa de la necesidad de un jurado de doce, *o de la unanimidad en el veredicto.'* (Bastardillas nuestras.) (176). Esa doctrina constitucional ha sido sostenida sin desviación alguna hasta el presente. Véanse *Brown* v. *New Jersey,* 175 U.S. 172; *Twining* v. *New Jersey,* 211 U.S. 78; *Snyder* v. *Massachusetts,* 291 U.S. 97; *Palko* v. *Connecticut,* 302 U.S. 319; *Adamson* v. *California,* 332 U.S. 46; *Rochin* v. *California,* 342 U.S. 165; *Breithaupt* v. *Abram,* 352 U.S. 432. En cuanto a la cláusula del debido proceso de ley de la Enmienda V, antes de aprobarse la Ley 600 (64 Stat. 319) y la Constitución del Estado Libre Asociado de Puerto Rico, el derecho a juicio por jurado, incluyendo la unanimidad del veredicto en casos criminales, no estaba protegido ni por la Carta Orgánica de 1917 ni por la Constitución Federal. *Hawaii* v. *Mankichi,* 190 U.S. 197; *Balzac* v. *Puerto Rico,* supra. Sería absurdo sostener que, después de aprobada la Ley 600, la Enmienda V exige un juicio por jurado en los casos criminales

que se ventilan en las cortes de Puerto Rico y también un vere-
dicto por unanimidad. El propósito de la Ley 600 fue precisa-
mente ampliar y no restringir los poderes y la autonomía de
Puerto Rico sobre sus asuntos internos. Cf. *Figueroa* v. *People
of Puerto Rico*, 232 F.2d 615 (C.A. 1, 1956)."

La sentencia dictada en el caso citado fue confirmada por
el Tribunal de Apelaciones del Primer Circuito, *Fournier* v.
*González*, 269 F.2d 26 (1959), y en la opinión dictada se
dijo (pág. 28):

"En cuanto se refiere a las garantías del Art. III, § 2, y a
la de la Enmienda Sexta de la Constitución Federal, es claro que
no podemos considerarlas aplicables a la situación presente sin
determinar que *Balzac* v. *Pueblo de Puerto Rico*, 1922, 258 U.S.
298, 42 S. Ct. 343, 66 L.Ed. 627, no constituye la ley actual;
y ciertamente *Reid* v. *Covert*, 1957, 354 U.S. 1, 77 S. Ct. 1222,
1 L.Ed. 2d 1148, no revocó el caso de *Balzac*. No podemos afir-
mar, después de una lectura cuidadosa de las opiniones emitidas
en *Reid* v. *Covert*, que una mayoría de los jueces levantó alguna
cuestión sobre la aplicación del caso de *Balzac* y del *Territorio
de Hawaii* v. *Mankichi*, 1903, 190 U.S. 197, 23 S.Ct. 787, 47
L.Ed. 1016, en las circunstancias del presente caso."

No obstante, descansando en cierto lenguaje de la opinión
escrita por el Juez Asociado señor Black en el caso de *Reid*
al referirse a los Casos Insulares, tanto la representación
del peticionario como el *amicus curiæ*, nos urgen para que
en efecto resolvamos que para la fecha de la comisión del
delito y del proceso del peticionario Puerto Rico era un terri-
torio incorporado de Estados Unidos. El pasaje de la opi-
nión a que se refiere dice así (pág. 13):

"Los 'Casos Insulares' que surgieron al principio del siglo,
se referían a territorios que habían sido recientemente conquis-
tados o adquiridos por Estados Unidos. Estos territorios, gober-
nados y administrados por el Congreso bajo el Art. IV, § 3
(de la Constitución Federal), tenían distintas culturas y cos-
tumbres que las de este país. Este Tribunal, aunque cerrada-
mente dividido, resolvió que ciertas garantías constitucionales
no eran aplicables a estos territorios ya que no habían sido
'expresa o implícitamente incorporado' a la Unión *por el Con-*

*greso.* Aun cuando aceptamos que ciertos derechos constitucionales 'fundamentales' son de aplicación general, la mayoría sostuvo que ello confligiría con prácticas establecidas desde hace mucho tiempo y que sería poco práctico, después de una acusación por gran jurado, requerir un juicio por jurado en las posesiones insulares. Los 'Casos Insulares' pueden distinguirse de estos casos por el hecho de que envolvían el derecho del Congreso para disponer reglas para gobernar temporalmente los territorios, con distintas tradiciones e instituciones, mientras que en estos casos es la ciudadanía americana el fundamento para el ejercicio del poder gubernamental."

En el acto de la vista oral se insinuó que las razones apuntadas en la opinión de *Reid*—diferencias culturales y de costumbres, distintas tradiciones e instituciones—han desaparecido. Como no es necesario a los fines de resolver la cuestión planteada, en vista de lo resuelto en el caso de *Fournier* por este Tribunal y por el de Apelaciones para el Primer Circuito, nos reservamos la expresión de nuestro criterio sobre este particular para una ocasión más propicia. Huelga añadir que a nuestro juicio el caso de *Reid* no revocó la doctrina de *Balzac*, y que la referencia al ejercicio de la jurisdicción en virtud de la ciudadanía americana no es una expresión para ser interpretada fuera del contexto y desvinculada de los hechos del caso, o sea, de la comisión de delitos por ciudadanos americanos en bases del Ejército de Estados Unidos situadas en dos países extranjeros, Japón e Inglaterra. Hemos considerado detenidamente los planteamientos del *amicus curiæ*, y nada encontramos en los mismos que nos incline a abandonar la posición que asumimos en el caso de Fournier.[4]

---

[4] Corwin, en *"The Constitution and What it Means Today"* (Princeton University Press, ed. 1958), dice (pág. 173):

"And while the United States may, through the treaty-making power acquire territory, its incorporation in the United States ordinarily waits upon action by Congress. Such incorporation may be effected either by admitting the territory into 'this Union' as new States or, less completely, by extending the Constitution to it. Until territory is thus incorporated into the United States, persons born therein are not citizens of the United States under the Fourteenth Amendment, though Congress may admit them

# III

■■ Finalmente alega el peticionario que los veredictos rendidos son nulos por estar en conflicto con la cláusula del debido proceso de ley de la Enmienda Quinta de la Constitución Federal, el Artículo 1, Sección 9, inciso 3 de dicha Constitución y el Artículo II, Secciones 3 y 8 del Acta Orgánica Jones, porque en virtud de la Ley Núm. 7 de 29 de diciembre de 1950 el acusado estaba impedido de hacer una encuesta (polling) del jurado. Además sostiene, que en cuanto se refiere a su caso, la aplicación de la ley mencionada resulta *ex post facto*, ya que a la fecha de la comisión del delito regía otra versión del artículo 290 del Código de Enjuiciamiento Criminal que le permitía hacer tal encuesta, que califica de "derecho procesal substancial".

Originalmente el artículo 290 del Código de Enjuiciamiento Criminal disponía que:

"Al darse un veredicto, y antes de consignarse en autos, podrá, a solicitud de cualquiera de las dos partes, tomarse el voto a los miembros del jurado, en cuyo caso deberá preguntársele a cada uno de ellos separadamente si aquél es su veredicto, y si alguno contestare negativamente, deberá ordenarse al jurado que se retire de nuevo, para que siga deliberando."

Al adoptarse el veredicto por mayoría de tres cuartas partes en lugar de la unanimidad de los miembros del jurado, dicho artículo se enmendó por la Ley Núm. 11 de 19 de agosto de 1948 (Leyes, pág. 213) para conformarla con el nuevo sistema, y la frase "y si alguno contestare negativamente" se sustituyó por "y si éste no fuere el veredicto de por lo

---

to citizenship, as in fact it has done in several instances (see pp. 55–57); and the power of Congress in legislating for such unincorporated territory is limited only by 'fundamental rights' of the individual, of which trial by jury is not one. Incorporation, however, makes the inhabitants of territories citizens of the United States, and extends to them full protection of the Constitution. Alaska is an 'incorporated' territory in this nomenclature; Samoa, Guam, Wake, etc. are probably 'unincorporated'; while recently a new category has appeared, with the elevation of Puerto Rico to the status of 'commonwealth'—an experiment decidedly worth study."

menos tres cuartas partes del jurado". En esta forma regía en 30 de octubre de 1950—fecha de la comisión de los delitos por los cuales se enjuició y declaró convicto al acusado.

Antes de la celebración del juicio que culminó en la declaración de culpabilidad de Jaca, se enmendó dicho artículo mediante la Ley Núm. 7 de 29 de diciembre de 1950 (Leyes, pág. 387; 34 L.P.R.A. sec. 821), y se eliminó toda referencia a la encuesta del jurado. Su redacción actual es como sigue:

"Si el veredicto fuere de tal índole que el tribunal pudiera recibirlo, el secretario lo hará inmediatamente constar íntegro en el acta, lo leerá en alta voz y preguntará al presidente si ése es el veredicto del jurado y cuántos jurados concurren en el mismo. Si el presidente responde que ése es el veredicto del jurado, y dicho veredicto se ajusta a la ley, éste será aceptado por la Corte considerándose consumado el veredicto y se disolverá el jurado."

La encuesta del jurado tiene su abolengo en el derecho común. Específicamente se atribuye a Sir Matthew Hale la paternidad de esta institución del derecho procesal cuando en su obra *History of the Pleas of the Crown* se expresó así: "Refiriéndonos al veredicto que se rinde, si el jurado manifestare que está de acuerdo, la corte *podrá* investigar tal hecho, y si en realidad no lo estuviere, estarán sujetos a ser multados." (⁵) El propósito de la investigación del voto individual de cada uno de los miembros del jurado es eliminar toda incertidumbre en cuanto al veredicto (⁶) y brindar una oportunidad a cada uno de los miembros para que exprese libremente su decisión sin los temores y presiones que puedan haber rodeado las deliberaciones privadas. (⁷) También se

---

(⁵) "Now touching the giving up of their verdict, if the jury say they are agreed, the court *may* examine them by poll, and if in truth they are not agreed, they are finable."

(⁶) *State* v. *Brown,* 168 N.E.2d 419 (Ohio 1953); *State* v. *Cleveland,* 78 A.2d 560 (N.J. 1951).

(⁷) *Commonwealth ex rel. Ryan* v. *Banmiller,* 162 A.2d 354 (Pa. 1960); *Solar* v. *United States,* 86 A.2d 538 (D.C. 1952); *State* v. *Schmelz,* 111 A.2d 50 (N.J. 1955); *Commonwealth* v. *Martin,* 109 A.2d 325 (Pa. 1954),

ha justificado (a) como parte del requisito de unanimidad requerido para un veredicto; [8] (b) como un incidente del derecho concedido al acusado a estar presente cuando se rinde el veredicto; [9] (c) como un medio para eliminar confusión y errores en los veredictos, especialmente en estados en donde el jurado puede hacer recomendaciones sobre la pena que deba imponerse en caso de convicción; [10] y (d) como una garantía para el acusado en aquellos casos en que se permiten veredictos firmados (sealed) por todos los miembros del jurado. [11] Igual justificación se ha expuesto para la encuesta del jurado en casos civiles. [11a]

Existen tres prácticas o reglas distintas con referencia a la encuesta del jurado a petición del acusado en un proceso criminal: (1) que el acusado tiene derecho a la encuesta como cuestión de derecho; (2) que la concesión de tal solicitud es discrecional del tribunal; y (3) que no se permite realizar la encuesta. [12] La regla que rige en la mayoría de los estados es al efecto de que si el estatuto [13] concede al acu-

---

en donde se alude a la posibilidad de que el veredicto sea el resultado de cansancio físico y mental debido a deliberaciones prolongadas.

[9] *State* v. *Smith*, 142 A.2d 890 (N.J. 1958); *State* v. *Vaszorich*, 98 A.2d 299, 313 (N.J. 1953); *Ryan* v. *People*, 114 Pac. 306 (Colo. 1911).

[9] *Carver* v. *Commonwealth*, 256 S.W.2d 375 (Ky. 1953); *Johnson* v. *Commonwealth*, 215 S.W.2d 838 (Ky. 1948); *State* v. *Waymire et al.*, 97 Pac. 46, 48 (Ore. 1908).

[10] *Bridges* v. *State*, 122 So. 533 (Miss. 1929).

[11] *State* v. *Simon*, 120 S.E. 230, 232 (S.C. 1923); *Stewart* v. *The People*, 9 Am.Rep. 78 (Mich. 1871); *State* v. *Callahan*, 7 N.W.603 (Iowa 1880).

[11a] Anotación, *Polling Jury in Civil Case*, 71 A.L.R.2d 640 (1960); *Polling Jury in Civil Cases in Pennsylvania*, 30 Temple L.Q. 351 (1957).

[12] Véase, Anotación, *"Accused Right to Poll of Jury"*, 49 A.L.R.2d 619 (1956).

[13] La Regla 31(d) de las de Procedimiento Criminal (Fed. Rules Cr. Proc., rule 31(d), 18 U.S.C.A.), que rige el procedimiento en las causas criminales en las cortes federales, permite la encuesta del jurado. Dispone que: "Cuando se ha rendido un veredicto y antes de que el mismo haya sido registrado, deberá realizarse una encuesta del jurado, a petición de cualquiera de las partes, o por iniciativa del tribunal. Si como resultado de la encuesta no hubiere concurrencia unánime, se ordenará al jurado que continúe deliberando o se disolverá."

Veinticuatro estados tienen disposiciones estatutarias específicas sobre

sado el derecho a solicitar la encuesta, una petición suya *oportunamente* presentada, no debe ser denegada. En estos estados en que el derecho se consagra por estatuto, constituye un derecho sustancial, y la negativa a concederlo constituye un error que ocasiona la revocación. *Carver* v. *Commonwealth*, 256 S.W.2d 375 (Ky. 1953). Igual regla predomina en la jurisdicción federal. *Miranda* v. *United States*, 255 F.2d 9 (C.C.A.1, 1958); *Mackett* v. *United States*, 90 F.2d 462 (Cir. 7, 1937).

Ahora bien, no parece haber disparidad de criterio en cuanto a que la encuesta del jurado puede ser renunciada por el acusado, y que esta renuncia se deduce de su omisión de hacer oportunamente la petición para que se lleve a efecto la investigación del voto individual de los jurados. En *State* v. *Vaszorich*, 98 A.2d 299, 314 (N.J. 1953) se dice que aunque este es un derecho que tiene el acusado, no es un elemento (ingredient) esencial de su convicción, y debe ser solicitado oportunamente. *State* v. *Dow*, 99 S.E.2d 860 (N.C. 1957); *Commonwealth* v. *Cano*, 128 A.2d 358 (Pa. 1957); *People* v. *Allgood*, 156 N.Y.S.2d 791 (1956). El momento apropiado para hacer la solicitud es después que se ha anunciado el veredicto y antes de que se haya pronunciado sentencia.

---

la encuesta del jurado: Ark. Stat. Ann. 1947, sec. 43–2160; Ariz. Code Ann. 1939, sec. 44–1912; Deering Cal. Penal Code 1941, sec. 1163; Del. Rules of Crim. Proc., Rule 31(D); Fla. Stat. Ann. 1941, sec. 919.10; Idaho Code Ann., 1946, sec. 19–2316; Burns Ind. Stat. Ann. 1933, sec. 9–1811; Iowa Code Ann. 1946, sec. 785.15; Carroll's Ky. Crim. Code of Prac. 1948, sec. 267; La. Rev. Stat. 1950, sec. 15.416; Minn. Stat. Ann. 1943, sec. 631.16; Mo. Rules of Crim. Proc. 27.01(e); Mont. Rev. Code 1947, 631.16; Mo. Rules of Crim. Proc. 27.01(e); Mont. Rev. Code 1947, sec. 94.7416; Neb. Rev. Stat. 1943, sec. 29–2024; Nev. Comp. Laws 1929 sec. 11021; N.J. Court Rules, Rule 2:7–9(d); McKinney Consol. Laws N.Y. Penal Code, sec. 450; N.D. Rev. Code 1943, sec. 29–2213; Page's Ohio Gen. Code 1938, sec. 13448.5; Okla. Stat. Ann. 1936, sec. 22.921; Ore. Stat. 1941, Ch. 22, sec. 921; Vernon Tex. Code Crim. Proc. 1925, art. 691; Utah Code Ann. 1953, sec. 77–33–10; Wyo. Com. Stats. 1945, sec. 10–1401. (Esta relación ha sido tomada de los dos artículos a que se hace referencia posteriormente en el escolio 17, y complementada por nuestro estudio de la jurisprudencia en cuanto se refiere a los estados de Nueva Jersey, Missouri y Delaware.) .

*State* v. *Vaszorich,* supra; *State* v. *Blisak,* 58 A.2d 711
(N.J. 1948) ; *State* v. *Cephus,* 86 S.E.2d 70 (N.C. 1955) ;
*United States* v. *Dye,* 61 F.Supp. 457 (D.C. Ky. 1945) ;
*Wooten* v. *State,* 92 S.E. 233 (Ga. 1917) ; *Watts* v. *Common-
wealth,* 106 S.E. 339 (Va. 1921). De ahí que en algunos
casos se haya resuelto que el derecho del acusado ha sido
infringido cuando el veredicto se ha recibido y registrado en
ausencia suya y de su abogado. *Carver* v. *Commonwealth,*
256 S.W.2d 375 (Ky. 1953) ; *Allen* v. *State,* 70 So.2d 644
(Ala. 1954) ; cf. *Clemens* v. *State,* 185 N.W. 209, 217 (Wis.
1921) ; *State* v. *Waymire et al.,* 97 Pac. 46, 48 (Ore. 1908) ;
*Hommer* v. *State,* 37 Atl. 26 (Md. 1897) ; *State* v. *Gorman,*
129 N.W. 589 (Minn. 1911) ; *Summeralls* v. *State,* 20 So.
242 (Fla. 1896). En *State* v. *Simon,* 120 S.E.230 (S.C.
1923) se recibió un veredicto firmado por los miembros del
jurado y el acusado no solicitó que se investigara a los miem-
bros del jurado individualmente. En apelación se sostuvo
que no hay fundamento alguno para imputar un error que
ocasione la revocación sobre una cuestión que no se planteó
oportunamente y sobre la cual no recayó resolución alguna.

En el presente caso, y presumiendo que el acusado hubiese
tenido derecho a la encuesta por ser aplicable la ley vigente
a la fecha de la comisión del delito, no se formuló solicitud
alguna a ese respecto, según se requería por el artículo 290
("a solicitud de cualquiera de las dos partes"). Si algún
derecho tenía, debe entenderse renunciado. La posición que
adopta ahora de que no se pidió porque el juez de todos modos
lo hubiese denegado, es pretender adivinar lo que el magis-
trado que presidía hubiese hecho ante el planteamiento. Los
tribunales no pueden resolver cuestiones de esta naturaleza
a base de meras especulaciones. ([14])

---

([14]) Los casos de *Fernández* v. *Rivera,* 70 D.P.R. 900 (1950) y *Pueblo*
v. *López Carrasquillo,* 70 D.P.R. 790 (1950) que invoca el peticionario para
sostener que el acusado no estaba obligado a hacer el planteamiento ante
el tribunal sentenciador, son distinguibles. En el de *Fernández* el acu-
sado solicitó *oportunamente* antes de que el tribunal le impusiera la sen-
tencia que se le concedieran los beneficios de una sentencia probatoria,

En vista de la anterior conclusión no es necesario que resolvamos si la Ley Núm. 7 de 29 de diciembre de 1950 es inconstitucional en cuanto a su aplicación al acusado por ser *ex post facto*, ([15]) o por el hecho de eliminar el derecho del acusado de realizar una encuesta del jurado, por ser éste según se alega parte sustancial del debido procedimiento de ley garantizado por la Enmienda Sexta ([16]) y la Enmienda Catorce. ([17])

*Por los fundamentos expuestos se declarará sin lugar la petición de hábeas corpus.*

---

a lo cual se negó por entender que una ley enmendatoria aprobada después de la comisión del delito por el acusado le privaba de dicha facultad; en el de *López*, de los autos claramente surgía que el veredicto condenatorio no había sido rendido por unanimidad, a pesar de lo cual el tribunal lo aceptó y sentenció al acusado, y además, como se dice en dicha opinión (pág. 792), "el derecho a la misma votación del jurado exigida cuando se cometió el delito es un derecho constitucional bajo la cláusula de *ex post facto* que no puede renunciarse."

([15]) Para que tal alegación tuviera éxito es necesario demostrar que la ley ha alterado la situación del acusado en su perjuicio "en relación con el delito o sus consecuencias", *Thompson* v. *Utah*, 170 U.S. 343 (1898), ya que obviamente no cae dentro de las cuatro categorías clásicas de leyes *ex post facto* señaladas en *Calder* v. *Bull*, 3 Dall. 386 (1798); (1) toda ley que considera delictivo y castiga un acto que al ser realizado era inocente; (2) toda ley que agrava un delito o lo hace mayor de lo que era al momento de ser cometido; (3) toda ley que altera el castigo e impone una pena mayor que la fijada al delito al momento de ser cometido; y, (4) toda ley que para castigar al acusado altera las reglas de evidencia, y que exige menos prueba o prueba distinta a la exigida por la ley vigente al momento de la comisión del delito.

([16]) La encuesta es un incidente del derecho a juicio por jurado, que según hemos resuelto no está garantizado localmente por la Enmienda Sexta de la Constitución Federal. Véase, discusión bajo la parte II de esta opinión.

([17]) Véase, *Fournier* v. *González*, 80 D.P.R. 262 (1958), 269 F.2d 26 (1959). En el único caso de Estados Unidos en donde se hizo un planteamiento idéntico, se resolvió que cualquier derecho a realizar una encuesta del jurado no es un elemento del debido procedimiento garantizado por la Enmienda Catorce. *Voss* v. *Tennessee*, resuelto en 1954 por la Corte Suprema de Tennessee, y que apareció en la edición preliminar de 270 S.W.2d 644. Sin embargo, el caso no aparece publicado en la edición encuadernada de dicho volumen. La referencia al mismo la hemos tomado de un artículo intitulado *"Whether Defendant Possesses an Inviolate Right to Poll Jury Following Return of Verdict"*, 33 Chi-Kent L.Rev. 361 (1955). Véase, además, *"Defendant's Right to Poll the Jury in Criminal Cases"*, 6 De Paul L. Rev. 92 (1956).