**Armando A. MIRANDA, Defendant, Appellant,**

v.

**UNITED STATES of America, Appellee.**

**No. 5240.**

United States Court of Appeals First Circuit.

Heard Feb. 5, 1958.

Decided April 30, 1958.

Robert D. Abrahams, Philadelphia, Pa., with whom B. F. Sanchez Castano, Cesar Andreu Ribas, Dr. Juan B. Soto and Jorge Ortiz Toro, San Juan, P. R., were on brief for appellant.

Ruben Rodriguez-Antongiorgi, U. S. Atty., San Juan, P. R., for appellee.

Before MAGRUDER, Chief Judge, and MARIS and WOODBURY, Circuit Judges.

MARIS, Circuit Judge.

The defendant, Armando A. Miranda, an attorney practicing in Puerto Rico, was convicted by a jury in the United States District Court for the District of Puerto Rico of subornation of perjury. The gravamen of the offense charged, which is punishable under section 1622 of title 18 United States Code, was that the defendant in court-martial proceedings held in Puerto Rico in which he acted as civilian counsel for three servicemen charged with burglary on a military post, suborned his clients to testify falsely with respect to the circumstances under which their confessions were procured. After conviction the defendant filed a motion in arrest of judgment and a motion for a new trial. The district court, after hearing argument, denied both motions. Sentence was imposed upon the defendant and judgment was entered thereon. This appeal followed.

The defendant, in his motion in arrest of judgment, contended that the district court lacked jurisdiction to try an offense against the United States committed in Puerto Rico. This attack on the jurisdiction of the court had been raised previously and had been rejected by the district court. See United States v. Long, D.C.P.R.1954, 118 F.Supp. 857. An attempt had then been made, without success, to have the Supreme Court of the United States consider the question. Ex parte Long, 1954, 347 U.S. 926, 74 S.Ct. 534, 98 L.Ed. 1079. When the question was raised by the defendant in this case, the district court again rejected, upon the basis of its holding in the Long case, the contention that the court lacked jurisdiction to try the defendant and impose sentence upon him.

The federal district court in Puerto Rico has had jurisdiction of criminal offenses since its creation by Congress in 1900. By the Foraker Act of 1900, 31 Stat. 77, a civil government was established for Puerto Rico and under section 34 of that Act Puerto Rico was constituted a judicial district and a district court of the United States was created. The Act provided that the statutory laws of the United States, not locally inapplicable, should have the same force and effect in Puerto Rico as in the United States. The powers of the federal district court were not enumerated, but it was provided that the court should have "the ordinary jurisdiction of district courts of the United States." It was clear that this grant of authority included the power to try offenses against the laws of the United States committed in Puerto Rico. Crowley v. United States, 1904, 194 U.S. 461, 24 S.Ct. 731,

48 L.Ed. 1075; Rodriguez v. United States, 1905, 198 U.S. 156, 25 S.Ct. 617, 49 L.Ed. 994.

When the second organic act, the Jones Act of 1917, 39 Stat. 951, 48 U.S.C. 1940 ed. § 731 et seq., was passed certain changes, notably the abolition of the former circuit courts, had been made in the federal courts system. See Munoz v. Porto Rico Ry. Light & Power Co., 1 Cir., 1936, 83 F.2d 262. Section 41 of the Jones Act, 48 U.S.C. 1940 ed. § 863, provided that Puerto Rico should constitute a judicial district to be called the district of Puerto Rico, that the district court for the district should be called the District Court of the United States for Puerto Rico, and that "Such district court shall have jurisdiction of all cases cognizable in the district courts of the United States, and shall proceed in the same manner." Upon reference to section 24 of the Judicial Code of 1911, 28 U.S.C. 1940 ed. § 41, in which were set out the cases cognizable in the district courts of the United States, we find that the second paragraph conferred jurisdiction of "all crimes and offenses cognizable under the authority of the United States." Thus jurisdiction, as this court held in Ramos v. United States, 1 Cir., 1926, 12 F.2d 761, 762, was possessed by the district court over criminal offenses against the laws of the United States committed in Puerto Rico.

In the face of these authorities, the defendant does not seriously contend that the district court did not have criminal jurisdiction under these organic acts. He does contend, however, that its previously existing criminal jurisdiction was withdrawn when on June 25, 1948 Congress codified and revised the Criminal and Judicial Codes by the enactment of revised titles 18 and 28 and in that connection amended section 41 of the Jones Act of 1917, 62 Stat. 989, 48 U.S.C.A. § 863, so as to strike therefrom the language which granted to the federal district court in Puerto Rico "jurisdiction of all cases cognizable in the district courts of the United States." This amendment was part of a general revision of section 41 under which the provisions of the section which had constituted Puerto Rico a judicial district and had provided for the appointment of a district judge and the establishment of a district court were all eliminated from the Jones Act in view of their inclusion in revised title 28. As amended, section 41 now merely provides in this regard that "The United States District Court for the District of Puerto Rico shall, in addition to its other jurisdiction," continue to have certain special jurisdiction in naturalization and diversity of citizenship cases which had previously been conferred upon it by section 41 of the Jones Act and which was not being included in revised title 28.

The Government says that the use of the term "other jurisdiction" in amended section 41 of the Jones Act was a recognition of the fact that the federal district court in Puerto Rico was to continue to exercise its existing jurisdiction which was thereafter to be derived by it, in common with all other federal district courts, from revised titles 18 and 28 of the United States Code. The defendant argues, however, that the term refers only to the civil jurisdiction conferred upon the court, along with all other federal district courts, by sections 1331 et seq. of revised title 28. He concedes, of course, that section 3231 of revised title 18 of the United States Code provides that:

"The district courts of the United States shall have original jurisdiction, exclusive of the courts of the States, of all offenses against the laws of the United States."

His contention is, however, that the United States District Court for the District of Puerto Rico is not a district court of the United States, within the meaning of section 3231 because it is not a true United States district court and is not specifically mentioned in that section. In this connection he points to

the definitions contained in section 451 [1] of revised title 28 under which the federal district courts in Hawaii and Puerto Rico are specifically included in the definition of courts of the United States and he relies on the fact that the definitions of that section are stated to be for use in title 28 which in his view excludes their use in determining the meaning of terms in title 18.

We do not agree with the defendant's contentions. On the contrary we are satisfied that Congress intended when it used the term "district courts of the United States" in section 3231 to include the United States District Court for the District of Puerto Rico. We think that the legislative history of revised titles 18 and 28 supports this view and we find no intimation there or elsewhere that Congress intended to withdraw from that court its long established criminal jurisdiction and leave a vacuum of federal criminal jurisdiction in Puerto Rico. Quite to the contrary, we find it to be assumed by Congress that the federal district court in Puerto Rico is and continues to be in all respects equal in jurisdiction to all other United States district courts.

The purpose of Congress in enacting titles 18 and 28 of the United States Code in 1948 is clearly evident from the committee reports.[2] It was to revise and systematically codify in these two titles all the current law relating to crimes, the judiciary and judicial procedure which was then to be found in the Revised Statutes of 1874, the Criminal Code of 1909, the Judicial Code of 1911 and a great number of other statutes. The two titles were enacted at the same time and one of their purposes was to present all this material in the two titles in a logical and consistent way. Broadly speaking this meant that title 28, entitled "Judiciary and Judicial Procedure," should contain the provisions for the establishment of the federal courts and for their jurisdiction in civil cases, while title 18, entitled "Crimes and Criminal Procedure," should contain the provisions for the definition and punishment of crimes and for the jurisdiction of the courts in criminal cases. Accordingly the provisions of law relating to the jurisdiction of the district courts, all of which had formerly been included in the Judicial Code of 1911, were now necessarily divided between the two revised titles.

At the same time Congress decided to bring the federal district courts which had been established by the territorial organic acts in Hawaii and Puerto Rico fully into the federal judicial system. Accordingly by sections 91 and 119 [3] of title 28 Hawaii and Puerto Rico were constituted judicial districts on a parity with the federal judicial districts in the States, by section 132(a) [4] of title 28 district courts were established in those districts by the same language which

1. "§ 451. Definitions
 "As used in this title:
 "The term 'court of the United States' includes the Supreme Court of the United States, courts of appeals, district courts constituted by chapter 5 of this title, including the district courts of the United States for the districts of Hawaii and Puerto Rico, the Court of Claims, the Court of Customs, and Patent Appeals, the Customs Court and any court created by Act of Congress the judges of which are entitled to hold office during good behavior.
 "The terms 'district court' and 'district court of the United States' mean the courts constituted by chapter 5 of this title.
 * * *" 28 U.S.C. § 451.

2. House Report No. 304, 80th Cong. 1st Sess.
 House Report No. 308, 80th Cong. 1st Sess.

3. "Puerto Rico constitutes one judicial district.
 "Court shall be held at Mayaguez, Ponce, and San Juan." 28 U.S.C. § 119.

4. "(a) There shall be in each judicial district a district court which shall be a court of record known as the United States District Court for the district." 28 U.S.C. § 132(a).

established the district courts in the federal judicial districts located in the States, and by section 133 [5] of title 28 provision was made for the appointment of district judges in those districts along with the district judges for the districts located in the States. By the same Act which enacted revised title 28, section 86 of the Hawaiian Organic Act of April 30, 1900, 48 U.S.C.A. § 645, which had established the federal district court in Hawaii, had provided for the appointment of its judges and had given it the "jurisdiction of district courts of the United States" was amended so as to strike those provisions from the section [6] and, as we have seen, section 41 of the Jones Act was similarly amended with respect to the federal district court in Puerto Rico.[7] This action was explained in the report of the Committee on the Judiciary of the House of Representatives as follows:

"Hawaii and Puerto Rico are included as judicial districts of the United States, since in matters of jurisdiction, powers, and procedure, they are in all respects equal to other United States district courts. See sections 91 and 119." House Rep. No. 308, 80th Cong. 1st sess., p. 6.

There is not the slightest suggestion anywhere in the legislative history that in taking this step to bring the district courts in Hawaii and Puerto Rico into the federal judicial system Congress intended to deprive them of the jurisdiction in criminal cases which they and all other federal district courts had theretofore exercised and which by section 3231 of title 18 Congress was continuing for all the "district courts of the United States." On the contrary it is apparent that Congress was intent on raising the status of the district courts in Hawaii and Puerto Rico from that of territorial courts established under the respective organic acts to that of district courts of the United States established under the federal judicial code, revised title 28,

5. "The President shall appoint, by and with the advice and consent of the Senate, district judges for the several judicial districts, as follows:

"*Districts* *Judges*
"Alabama:
 "Northern ..................... 2
 * * * * *
"Hawaii ........................ 2
 * * * * *
"Puerto Rico ................... 1
 * * * * *
"Wyoming ..................... 1
 * * *" 28 U.S.C. § 133.

6. The amendment of section 86 of the Hawaiian Organic Act was made by section 8 of the Act of June 25, 1948, 62 Stat. 986, which enacted title 28 of the United States Code. The Reviser's note to that section stated in part: "The provisions of subsections (c) and (d) relating to jurisdiction, powers of the judges, district attorney, and marshal, appellate jurisdiction of the court of appeals for the ninth circuit, and applicability of Federal laws to juries and jury trials (48 U.S.C., 1940 ed., secs. 642, 645, part), were stricken out by this amendment and were not preserved because Hawaii is included in the revision, by section 91, as a judicial district, and section 451 thereof includes the United States District Court for Hawaii in its definition of a 'district court of the United States.' Therefore these provisions are covered by the provisions of revised title 28 governing such matters." House Report No. 308, 80th Cong. 1st Sess. p. A591.

7. The amendment of section 41 of the Jones Act was made by section 20 of the Act of June 25, 1948, 62 Stat. 989, which enacted title 28 of the United States Code. The Reviser's note to that section stated in part: "The provisions of this section, relating to the creation of the judicial district of Puerto Rico, appointment and tenure of court officers and employees, all stricken out by this amendment, are incorporated in sections 119, 133, 134, 501, 504, 541, 631, 751, and 1295 of revised title 28. * * * The jurisdictional provisions, also omitted by this amendment, are unnecessary because, by transferring the other omitted provisions to title 28, the jurisdictional provisions of sections 1331 et seq. of such title, as revised, apply to the district court in Puerto Rico. See also, section 451 of such revised title, which includes the district court in Puerto Rico in its definitions of 'court of the United States,' 'district court,' and 'district court of the United States.'" House Report No. 308, 80th Cong. 1st Sess. p. A599.

on a parity with the other federal district courts and deriving their authority from the same statutory source from which all the district courts in the federal judicial system receive their powers. Indeed, since these two courts exercise only federal judicial power as defined by Article III, section 2, of the Constitution they might well be regarded as constitutional district courts indistinguishable in any respect from the federal district courts in the States, were it not for the fact that Congress has treated their judges differently from the other district judges in the matter of tenure of office.[8]

The Revisor's notes[9] to sections 8 and 20 of the Act of June 25, 1948 which amended the Hawaiian Organic Act and the Jones Act in the manner which we have described, apparently ignored the fact that part of the jurisdiction of the district courts, that relating to criminal offenses, was being codified in revised title 18, and not in revised title 28. At least that fact is not mentioned in the notes and it may well have been overlooked when they were prepared. But the grant of criminal jurisdiction by section 3231 of title 18 to the "district courts of the United States" was comprehensive enough to include the district courts in Hawaii and Puerto Rico in view of their complete incorporation into the system of district courts of the United States by title 28. For purposes of jurisdiction and powers, and doubtless for other purposes as well, we think it is clear that they were intended by Congress to be "district courts of the United States". This conclusion is inevitable irrespective of the applicability of the specific definition contained in section 451 of title 28. But we also think that section 451, although in terms applicable to title 28, may be taken as a further indication of the Congressional

intent that section 3231 of revised title 18 should apply to all the district courts in the federal system. We accordingly hold that the United States District Court for the District of Puerto Rico is a district court of the United States within the meaning of section 3231 of title 18 and is empowered by that section to exercise jurisdiction of offenses against the laws of the United States.

The defendant's next attack is on the venue. He points out that the Constitution in Article III, section 2, clause 3, provides that the trial of crimes "shall be held in the State where the said Crimes shall have been committed; but when not committed within any State, the Trial shall be at such Place or Places as the Congress may by Law have directed." His contention is that his alleged crime was not committed in any State of the union but rather in the Commonwealth of Puerto Rico and that Congress has not directed where the trial of such a crime should be had, as the Constitution requires. In this connection he concedes, as he must, that the Federal Rules of Criminal Procedure do direct, by Rule 18, 18 U.S.C.A., that the prosecution of a crime shall be had in a district in which the offense was committed, but he says that this is not a direction by *Congress* as the Constitution requires.

There is no merit in this contention. It is sufficient to point out that Rule 18 of the Federal Rules of Criminal Procedure was prescribed by the Supreme Court pursuant to the authority conferred upon the court by Congress through the Act of June 29, 1940, 54 Stat. 688, 18 U.S.C. 1940 ed. § 687 *. That Act specifically authorized the Supreme Court to prescribe rules of procedure with respect to proceedings prior to and including verdict in criminal cases in the district courts of the United

---

8. By the second sentence of section 134 (a) of title 28 the tenure of office of the district judges appointed for the districts of Hawaii and Puerto Rico was limited to terms of years rather than during good behavior as in the case of other district judges. Article III, section 1, of the

Constitution provides that: "The Judges, both of the supreme and inferior Courts, shall hold their Offices during good Behaviour."

9. See Notes 6 and 7.

* Now 18 U.S.C.A. § 3771

States, including the district courts of Hawaii and Puerto Rico. Moreover the Act provided that the rules thus prescribed should not take effect until after being reported to Congress at the beginning of a regular session and until after the close of such session and that thereafter all laws in conflict therewith should be of no further force and effect. The rules were adopted by the Supreme Court and thus reported at the beginning of the first regular session of the 79th Congress in 1945 and became effective on March 21, 1946, three months subsequent to the adjournment of that session, pursuant to the provision of Rule 59. Accordingly on that date the venue provisions of Rule 18, by the express direction of Congress given in the Act of 1940, superseded the prior statutes upon the subject of the venue of the district courts in criminal cases. We are satisfied that this was a sufficient compliance with the mandate of the Constitution and that the venue for the prosecution of offenses committed in Puerto Rico has been validly laid by Rule 18 in the judicial district of Puerto Rico.

 The defendant also contends that the indictment against him was defective because women had not been included among the prospective jurors from whom was drawn the grand jury which returned the indictment [10] and because persons who could not speak and understand the English language were systematically excluded from that grand jury. His contention in regard to the absence of women from the grand jury was raised after trial in his motion in arrest of judgment. The district court correctly refused to admit evidence in regard to this matter on the ground that the defendant's challenge to the panel

came too late. For it is well settled that an objection to the array or panel is required to be presented at the early stages of the proceeding, Agnew v. United States, 1897, 165 U.S. 36, 44, 17 S.Ct. 235, 41 L.Ed. 624; Crowley v. United States, 1904, 194 U.S. 461, 469–474, 24 S.Ct. 731, 48 L.Ed. 1075; Fed.Rules Crim.Proc. rules 6(b) and 12, otherwise, it is considered waived. United States v. Gale, 1883, 109 U.S. 65, 69, 3 S.Ct. 1, 27 L.Ed. 857; United States v. Hartwell, C.C.Mass.1870, 26 Fed.Cas. pp. 204, 205, No. 15,319; Wright v. United States, 8 Cir., 1948, 165 F.2d 405, 407; King v. United States, 8 Cir., 1948, 165 F.2d 408, certiorari denied 334 U.S. 848, 65 S.Ct. 1499, 92 L.Ed. 1771; York v. United States, 8 Cir., 1948, 167 F.2d 847, 848; United States v. Klock, 2 Cir., 1954, 210 F.2d 217, 220; Poliafico v. United States, 6 Cir., 1956, 237 F.2d 97, 110, certiorari denied 352 U.S. 1025, 77 S.Ct. 590, 1 L.Ed.2d 597. See, also, Annotation, 9 A.L.R.2d 661, 667. His second contention, which was timely raised in a motion to dismiss the indictment, is answered by section 44 of the Jones Act, now the Puerto Rican Federal Relations Act, 48 U.S.C.A. § 867, which provides that a juror in the district court shall "have a sufficient knowledge of the English language to enable him to serve as a juror." [11] This provision complements section 42 of the Jones Act, 48 U.S.C.A. § 864, which provides that all proceedings in the district court "shall be conducted in the English language." [12] Both provisions are quite clearly reasonable and indeed necessary to the proper functioning of the court as a member of the federal judicial system. Certainly it is reasonable that a court conduct its proceeding in a single language and it is obviously essential that the judge, the counsel

10. It appears that by an order entered February 12, 1954 the district court directed the clerk of the court and the jury commissioner to prepare a new list of jurors to serve in the court, to include citizens of both sexes. Six months later, August 5, 1954, the indictment here involved was found by the grand jury. The trial was held in September, 1956,

and three women served on the jury which tried the defendant.

11. This provision was first enacted by the Act of June 25, 1906, 34 Stat. 466.

12. This provision was first enacted by section 34 of the Foraker Act of April 12, 1900, 31 Stat. 85.

and all the jurors have a working knowledge of that language if the judicial machinery is to function efficiently.

We turn then to the defendant's contention that the district court erred in not granting him a new trial. One of the grounds he asserts in support of this contention is that reversible error was committed when his request to poll the jury was denied by the trial judge. He relies upon Rule 31(d) of the Federal Rules of Criminal Procedure which provides:

"(d) Poll of Jury. When a verdict is returned and before it is recorded the jury shall be polled at the request of any party or upon the court's own motion. If upon the poll there is not unanimous concurrence, the jury may be directed to retire for further deliberations or may be discharged."

▆ The right of the defendant to have the jury polled, as thus recognized and established by Rule 31(d), is of ancient origin and of basic importance. The object is to give each juror an opportunity, before the verdict is recorded, to declare in open court his assent to the verdict which the foreman has returned and thus to enable the court and the parties to ascertain with certainty that a unanimous verdict has in fact been reached and that no juror has been coerced or induced to agree to a verdict to which he has not fully assented. Humphries v. District of Columbia, 1899, 174 U.S. 190, 194, 19 S.Ct. 637, 43 L.Ed. 944; Solar v. United States, D.C.Mun. App.1952, 86 A.2d 538; State v. Thursby, Mo.1952, 245 S.W.2d 859, 863; Carver v. Commonwealth, Ky.1953, 256 S. W.2d 375, 49 A.L.R.2d 616, and annotation thereto; Commonwealth v. Martin, 1954, 379 Pa. 587, 593, 109 A.2d 325, 328; State v. Schmelz, 1955, 17 N.J. 227, 232–236, 111 A.2d 50, 53–55; Ruffin v. State, Del.1956, 123 A.2d 461, 467; Wilson v. State, 1956, 93 Ga.App. 375, 91 S.E.2d 854; State v. Dow, 1957, 246 N. C. 644, 99 S.E.2d 860; 23 C.J.S. Criminal Law § 1392; 89 C.J.S. Trial § 490; 14 Am.Jur. Criminal Law § 212; 53 Am.

Jur. Trial §§ 1015–1017. It is, however, a right which must be seasonably exercised and if it is not requested before the verdict is recorded it comes too late. State v. Hubbs, 1922, 294 Mo. 224, 242 S.W. 675; State v. Vaszorich, 1953, 13 N.J. 99, 127, 98 A.2d 299, 314, certiorari denied 346 U.S. 900, 74 S.Ct. 219, 98 L. Ed. 400; State v. Cephus, 1955, 241 N.C. 562, 86 S.E.2d 70; Commonwealth v. Cano, 1956, 182 Pa.Super. 524, 538, 128 A.2d 358, 366, affirmed 389 Pa. 639, 133 A.2d 800; 89 C.J.S. Trial § 490; 14 Am.Jur. Criminal Law § 213; 53 Am. Jur. Trial § 1018, Annotation, 49 A.L.R. 2d 636; Rule 31(d), Fed.Rules Cr.Proc.

The Government, conceding the right, contends that in this case the defendant's demand for the polling of the jury came too late and the action of the trial judge in refusing to permit the polling was accordingly proper. To resolve this question we turn to the record which shows that the following took place when the jury returned to the court room with its verdict:

"The Clerk: Mr. Foreman, have you agreed upon a verdict?

"The Foreman: We have.

"The Court: Is this the unanimous verdict of all you jurors? So say you all?

"The Foreman: Yes, your Honor.

"The Court: I order that the verdict be read and entered.

"The Clerk: United States of America v. Armando A. Miranda, Number 7229 Criminal. We, the jury, find the defendant guilty as charged in the first count of the indictment, guilty as charged in the second count of the indictment, guilty as charged in the third count of the indictment. Signed, J. E. Vizcarrondo, Foreman.

"The Court: The verdict is ordered recorded.

"Mr. Abrahams: If Your Honor please, I am not familiar with the practice in this court, but if it is permissible I would like the jury to be polled.

"The Court: Mr. Abrahams, I am sorry, because the rule is to the effect that the poll of the jury can be requested only before the verdict is recorded. The verdict has already been recorded."

We think that the record conclusively demonstrates that the defendant was denied a reasonable opportunity to have the jury polled. It was not enough that the trial judge had asked the jurors in a body whether the written verdict which had been returned by their foreman but which had not yet been read aloud in their presence, was the unanimous verdict of all of them and that their foreman had answered that it was. For the right to poll the jury is the right to require each juror individually to state publicly his assent to or dissent from the returned verdict which has been announced in open court in his presence. Obviously the right cannot be exercised intelligently until after the verdict has been announced in open court so that the defendant and all others present may know what it is. Tilton v. State, 1874, 52 Ga. 478. Indeed a request prior thereto would be premature. State v. Brooks, 1955, 59 N.M. 130, 279 P.2d 1048, 1050. To direct the clerk to read and enter the verdict and then immediately to record it, as was done in this case, deprived the defendant of the opportunity to exercise the right to poll the jury which Rule 31 (d) guaranteed to him. If we assume that the clerk actually completed the recording of the verdict immediately after the trial judge ordered her to do so it must be concluded that the judge erred in failing to allow the defendant a reasonable opportunity to claim his right. And if the verdict had not yet actually been recorded when counsel for the defendant, addressing the court immediately thereafter, requested that the jury be polled it must be concluded that the trial judge erred in ruling that the request came too late. In either case the action of the trial judge constituted reversible error. Mackett v. United States, 7 Cir., 1937, 90 F.2d 462.

Since the judgment must be reversed and a new trial ordered because of the denial of the defendant's right to poll the jury it is unnecessary for us to consider the other reasons which he advances for seeking a new trial.

The judgment of the district court will be vacated, the verdict set aside and the cause remanded for a new trial.