UNITED STATES of America,
Plaintiff-Appellee,

v.

Herman Leon NEAL, Defendant-
Appellant.

No. 16600.

United States Court of Appeals
Sixth Circuit.

Aug. 16, 1966.

Wiley Dinsmore (Court Appointed), Cincinnati, Ohio, for appellant.

Bradley Hummel, Asst. U. S. Atty., Columbus, Ohio, Joseph P. Kinneary, U. S. Atty., Roger J. Makley, Asst. U. S. Atty., Columbus, Ohio, on brief, for appellee.

Before PHILLIPS and EDWARDS, Circuit Judges, and CECIL, Senior Circuit Judge.

PHILLIPS, Circuit Judge.

This is an appeal from a conviction based upon a jury verdict finding appellant guilty of transporting a stolen automobile in interstate commerce in violation of the Dyer Act, 18 U.S.C. § 2312. He was sentenced to a term of five years.

Appellant was arrested in Ohio by a State highway patrolman for a hit and run offense. While driving a stolen Chevrolet automobile, he sideswiped a car that he was undertaking to pass at a double yellow line in a no-passing zone, then speeded away from the scene of the accident.

The Chevrolet had been stolen the previous day in Pittsburgh, Pennsylvania. At the time of the accident, the original license plates had been removed and the car bore license plates that had been stolen from another Pennsylvania vehicle. These stolen plates were tied on with two leather shoe laces which were identified as having been taken from work shoes belonging to appellant, which were found in the stolen Chevrolet.

Appellant denied at all times that he stole the automobile or had knowledge that it was a stolen vehicle. He testified that he thought the car had been bor-

rowed or rented by his companion, one Fuller, and that Fuller was driving at the time the automobile crossed the Pennsylvania-Ohio border.

The principal contentions of appellant on this appeal are: (1) that damaging admissions made by him to FBI agents while appellant was without counsel were admitted into evidence; (2) that the district court committed reversible error by admitting admissions made to federal officers prior to the time that appellant was taken before a United States Commissioner for preliminary examination; and (3) that he was denied the right to poll the jury.

On the day of his arrest by the State patrolman and while in State custody, appellant was interviewed on two occasions by FBI agents. Two days later he was interviewed again and taken before the United States Commissioner.

One of the FBI agents testified as follows concerning the first interview:

"Q Mr. Roberts, prior to your interview of Mr. Neal, did you say anything to him?

"A Yes, sir. At the beginning of the interview, after I identified myself, I advised him that he did not have to make a statement, any statement he did make could be used against him in a Court of Law. He was advised that he had the right to consult an attorney before making a statement, and nothing was said to induce him to make a statement of any type.

"Q And, what was Mr. Neal's response to that?

"A At this point, he said he had nothing to say. And, at this time, I asked him if he would furnish some background information, and he furnished us with his name and a brief description. After that, I asked him again concerning a 1961 Chevrolet that the Ohio State Highway Patrol had recovered. He said that he [sic] nothing to say other than the fact that he had driven this car from Pennsylvania into Ohio.

\*　　\*　　\*　　\*　　\*　　\*

"A And he said this was the same 1961 Chevrolet that he was driving at the time he was involved in a hit and run accident and later arrested by the Ohio State Highway Patrol."

The same agent testified as follows concerning the second interview:

"At this point, he was again advised by myself that he did not have to make a statement and any statement he did make could be used against him in a Court of Law. He was advised that he had the right to consult an attorney before making a statement. At this point, he again advised that he had driven this 1961 Chevrolet from Pennsylvania to Ohio, and in exhibiting the shoes to him, he stated that those were his work shoes, and that he had used them in his employment with the Zubic Towing Company in Pittsburg[h]. Mr. Neal was asked if the license plate on the 1961 Chevrolet had been put on with part of the shoe string from the shoe, and he said he had nothing to say."

The other FBI agent testified as follows:

"He was interviewed by Special Agent Roberts, Delbert D. Roberts and myself at Post 7 of the Ohio State Highway Patrol at St. Clairsville, Ohio. At the outset of the interview, he was informed by Special Agent Roberts that he did not have to talk to us, that anything he did say could be used against him in a Court of law. He was also advised of his right to seek counsel with an attorney of his own choosing if he so desired. We interviewed him concerning a car that he was in when he was arrested by the Ohio State Highway Patrol on September 29th, 1964. We asked him if he drove this car from Pennsylvania to Ohio and he said that he had nothing to say. We then asked him if he would furnish us some background information concerning himself. He thereafter furnished his name and some background data concerning himself. After this, he told us that he drove the 1961 Chevrolet

that he was arrested in by the Ohio State Highway Patrol from Pennsylvania to Ohio.

"Q Okay, now. He specifically told you that at that first interview?

"A Yes.

"Q Continue.

"A He told us that he did not steal the car on this occasion. We asked him where he got the car from and he said that he did not want to answer that."

\* \* \* \* \* \*

"Q Now, what happened at the second interview on September 30th?

"A Later on, on September 30th, we again interviewed him at the Belmont County jail in St. Clairsville, Ohio. At the outset of this interview, Special Agent Roberts again informed him that he did not have to talk to us and that anything he did say could be used against him in a Court of law, and he also told him that he had the right to seek counsel with an attorney. During this interview, he again told us that he drove the 1961 Chevrolet from Pennsylvania to Ohio, but he said that he had nothing to say as to how he came in possession of the vehicle.

"Q Again, specifically admitted the transportation from Pennsylvania to Ohio, is that correct?

"A Yes."

Both FBI agents testified that appellant did not ask to see an attorney or request that an attorney be provided for him at any time prior to or during these interviews.

The district judge appointed a reputable attorney of the Columbus, Ohio, bar who represented appellant at the trial and conducted a vigorous defense on his behalf.

■ The conviction of appellant took place after the decision of the Supreme Court in Escobedo v. State of Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977, and prior to the decision in Miranda v. State of Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694. The latter decision has no application in the present case. Johnson v. State of New Jersey, 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882.

We conclude that appellant's contention concerning deprivation of the right to counsel is without merit.

■ We further find no unreasonable delay in taking appellant before the United States Commissioner for preliminary hearing under the facts of this case. In compliance with Rule 5(a), Federal Rules of Criminal Procedure, he was taken before the Commissioner promptly after his arrest by FBI agents. Previously he was in State custody under a lawful arrest.

■ Likewise we find no merit in the contention that appellant was deprived of the right to poll the jury. The record shows that no request was made that the jury be polled nor was this asserted as grounds for a motion for new trial.

■ Under Rule 31(d), Federal Rules of Criminal Procedure, the jury shall be polled at the request of any party before the verdict is recorded. This right "must be seasonably exercised and if it is not requested before the verdict is recorded it comes too late." Miranda v. United States, 255 F.2d 9, 17 (C.A. 1).

As said by the late Judge Shackelford Miller, Jr., during his tenure as a district judge, in United States v. Dye, 61 F.Supp. 457, 459 (W.D.Ky.):

"The last contention of the defendant is that the jury which returned the verdict of guilty was not polled by the court. The defendant did not request that the jury be polled. While he had a right to have the jury polled, yet a failure to make such a request is a waiver of that right. Humphries v. District of Columbia, 174 U.S. 190, 194, 195, 19 S.Ct. 637, 43 L.Ed. 944."

Appellant contends that he was deprived of any chance to request a poll of the jury because of the abrupt action of the district judge in accepting and recording the verdict. Upon examination of the record we find this contention to be without merit.

Affirmed.