# United States Court of Appeals
## For the First Circuit

No. 22-1596

U.S. SECURITIES AND EXCHANGE COMMISSION,

Plaintiff, Appellant,

v.

HENRY B. SARGENT,

Defendant, Appellee,

FREDERICK M. MINTZ; ALAN P. FRAADE; JOSEPH J. TOMASEK; PATRICK
GIORDANO,

Defendants.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Richard G. Stearns, U.S. District Judge]

Before

Barron, Chief Judge,
Lynch and Gelpí, Circuit Judges.

Paul G. Alvarez, Senior Appellate Counsel, with whom Dan
M. Berkovitz, General Counsel, and Michael A. Conley, Solicitor,
were on brief, for appellant.

Peter R. Ginsberg, with whom Christopher R. Neff and
Moskowitz & Book LLP were on brief, for appellee.

April 18, 2023

**BARRON, Chief Judge**.  A party to a civil jury trial has the right under Federal Rule of Civil Procedure 48(c) to request that the district court individually poll each juror after the jury has returned a verdict to confirm that each juror agrees with the verdict that was announced.  The question presented in this interlocutory appeal is whether a party that has been denied that right is automatically entitled to a new trial, even when the jury has been polled collectively, or whether -- given that Federal Rule of Civil Procedure 61 instructs that we "must disregard all errors . . . that do not affect any party's substantial rights" -- that party must show prejudice in the specific case at hand to be entitled to that remedy.

We have not had occasion to address this question before.  But, we have long held that denial of the right under Federal Rule of Criminal Procedure 31(d) to poll each juror individually in a criminal case is per se reversible error, see Miranda v. United States, 255 F.2d 9, 18 (1st Cir. 1958); Ira Green, Inc. v. Mil. Sales & Serv. Co., 775 F.3d 12, 25 (1st Cir. 2014), even though Federal Rule of Criminal Procedure 52(a) sets forth an analogue to Civil Rule 61, see Fed. R. Crim. P. 52(a) ("Any error . . . that does not affect substantial rights must be disregarded.").  In light of the arguments presented, and given that we do not write on a clean state but are instead bound by circuit precedents that we have no occasion to consider anew here, we conclude that our

circuit law points us to interpreting Civil Rule 48(c) no differently from our interpretation of Criminal Rule 31(d). We therefore affirm the interlocutory order of the District Court.

## I.

### A.

In June 2019, the Securities and Exchange Commission ("SEC") filed this civil enforcement action against Henry B. Sargent in the United States District Court for the District of Massachusetts. The action alleges that Sargent engaged in a "fraudulent and deceptive scheme to disguise public stock sales by corporate affiliates that should have been registered with the [SEC]" under federal securities law.

A ten-day trial before Judge William G. Young ensued in the District of Massachusetts. The jury returned a unanimous verdict against Sargent.

The court clerk first recorded the verdict by reading aloud each of the questions on the verdict form along with each of the jurors' corresponding responses. The clerk then polled the jury collectively by asking:

> CLERK: So say you Madam Forelady, is that your verdict?
>
> FOREPERSON: Yes.
>
> CLERK: So say you members of the jury?
>
> JURY: (In unison.) Yes.

Judge Young then thanked the jurors for their service and directed them to retire to the room where they had deliberated. Before the jury left the courtroom, Sargent's counsel asked: "Can we poll the jury?" Judge Young responded: "Denied. They may be excused."

After the jury retired to the deliberation room, Judge Young remained on the bench to discuss several matters with the parties. He then joined the jurors in that room.

The next day, Sargent informed the SEC that he believed Judge Young had committed reversible error by denying his request to poll the jury, because he had been thereby denied his right to poll each of the jurors individually. The SEC immediately filed an emergency motion to recall the jurors so that they might be polled individually, which Judge Young denied. The following day, Sargent moved for a new trial.[1]

At a hearing regarding the motion, Judge Young acknowledged that his denial of Sargent's request was in clear

---

[1] The SEC notes that Sargent "did not invoke [Civil] Rule 48(c)" when he first requested that the jury be polled, did not immediately object that the court's denial of his request violated Civil Rule 48(c), and only invoked Civil Rule 48(c) before the court for the first time in his motion for a new trial. But the SEC does not argue on appeal that Sargent's invocation of Civil Rule 48(c) was for that reason untimely, and the District Court below concluded that it was not. We therefore consider any such argument waived. See United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.").

violation of Civil Rule 48(c). Judge Young explained that he "simply did not know the rule" because it had been adopted in 2009 and since then no party in a civil case had requested that he poll each of the jurors individually. He then partially recused himself for the determination of whether that error automatically entitled Sargent to a new trial or whether it should first be assessed for harmlessness.

**B.**

The issue was randomly assigned to Judge Richard G. Stearns. After receiving additional briefing from the parties, he ruled that a violation of the right to poll each of the jurors individually under Civil Rule 48(c) is per se reversible and that Sargent was therefore entitled to a new trial.

Judge Stearns based this conclusion chiefly upon our dicta in Ira Green that because "[t]he criminal and civil rules on jury polling are now virtually identical[,] . . . [c]ommon sense suggests that [they] should be interpreted in pari passu." 775 F.3d at 25. Judge Stearns also relied on the Seventh Circuit's statements in an earlier case that "there is little reason to distinguish" between the civil and criminal jury polling rules, and that "[t]here is no doubt that a district court's refusal, or even neglect, to conduct a jury poll upon a timely request is ground for a new trial." Verser v. Barfield, 741 F.3d 734, 738 (7th Cir. 2013).

- 5 -

Although Judge Stearns termed our dicta in Ira Green a "blaze marker" for how we might rule on the question, he did acknowledge that decision had also called the issue "open to legitimate question." Ira Green, 775 F.3d at 24-25. Judge Stearns also noted Ira Green's observation that "[m]ore than one state court, interpreting similar parallel mandatory jury-polling rules, has concluded that a violation of the right to a jury poll engenders automatic reversal in criminal cases but not in civil cases." Id. at 25 (citing Wiseman v. Armstrong, 989 A.2d 1027, 1040-41 (Conn. 2010)).

Judge Stearns therefore sua sponte certified the question for immediate interlocutory appeal, which we granted. The SEC then filed this timely appeal.

## II.

The issue that we address is whether, under our precedent, the District Court's denial here of the right to poll each juror individually under Civil Rule 48(c), after the jury had been collectively polled, was per se reversible error.[2] Our review is de novo. See Langlois v. Abington Hous. Auth., 207 F.3d 43, 47 (1st Cir. 2000). We begin by explaining that, under our precedent,

---

[2] We note that, were we to agree with the SEC that harmlessness review applies, Sargent's motion for a new trial would not necessarily fail. Rather, Sargent would have the opportunity to show that the error prejudiced him in a way that warrants a new trial.

- 6 -

a district court's denial of the right to poll each of the jurors individually under Criminal Rule 31(d) constitutes per se reversible error. We then explain why we conclude that our circuit precedent leads us to an affirmance.

### A.

The key precedent with respect to Criminal Rule 31(d) is Miranda, which we decided in 1958. At that time, Criminal Rule 31(d) provided:

> Poll of Jury. When a verdict is returned and before it is recorded the jury shall be polled at the request of any party or upon the court's own motion. If upon the poll there is not unanimous concurrence, the jury may be directed to retire for further deliberations or may be discharged.

Miranda, 255 F.2d at 17.

In Miranda, after the jury had returned a guilty verdict against the defendant, the district court polled the jury collectively and ordered that the verdict be recorded. Id. Counsel for the criminal defendant then requested that each of the jurors be polled individually, but the district court denied the request on the ground that the verdict had already been recorded. Id. at 17-18. The defendant then appealed, seeking to have his criminal conviction vacated on a number of grounds. One of those grounds was that the district court had "erred" in denying the request to poll each of the jurors individually and that the error was "reversible." Id. at 17.

- 7 -

In assessing that contention, we explained that "[t]he right of the defendant to have the jury polled . . . is of ancient origin and of basic importance," and that this was the right "thus recognized and established by [Criminal] Rule 31(d)." Id. (citing Humphries v. District of Columbia, 174 U.S. 190, 194 (1899)).  We added that the "object" of individual polling is "to give each juror an opportunity . . . to declare in open court his assent to the verdict," so that "the court and the parties [can] ascertain with certainty that a unanimous verdict has in fact been reached and that no juror has been coerced or induced to agree to a verdict to which he has not fully assented."  Id.

Having identified the right that the rule secured, which the government had "concede[d]," id., we then addressed whether that right had been denied. We concluded that it had.  We explained that the defendant "was denied a reasonable opportunity to have the jury polled," and that "[i]t was not enough that the trial judge had [collectively polled] the jurors." Id. at 18.  That was so, we explained, because "the right to poll the jury is the right to require each juror individually to state publicly his assent to or dissent from the returned verdict."  Id.

With this analysis in place, we then turned to the question of remedy.  We explained in that regard that there was no need to address the defendant's other grounds for seeking a new trial.  The reason that we gave was that "the judgment must be

reversed and a new trial ordered because of the denial of the defendant's right to poll the jury."  Id.

In so concluding, we did not undertake any inquiry into whether the denial of the right could be deemed harmless.  And, that was so even though Criminal Rule 52(a), entitled "Harmless Error," was on the books at the time and provided that "[a]ny error . . . which does not affect substantial rights shall be disregarded."  Fed. R. Crim. P. 52(a), reprinted in 18 U.S.C.A. app. at 3439 (1958).

In the wake of Miranda, Criminal Rule 31(d) has been amended to make manifest what Miranda understood to be already there: that the right the rule secured was a right to poll each of the jurors individually following a verdict, and not simply to poll the jury collectively.  See Fed. R. Crim. P. 31(d) advisory committee's note to 1998 amendment.  Moreover, our circuit has not questioned our conclusion in Miranda that a denial of that right in a criminal case, when "seasonably exercised," Miranda, 255 F.2d at 17, requires a new trial without any consideration of whether the error was harmless.  On the contrary, only a few years ago in Ira Green, we declared that "the prevailing rule" both in our circuit and others under Criminal Rule 31(d) is that "a failure to poll the jury after a timely request constitutes per se reversible error."  775 F.3d at 25 (emphasis added) (first citing United States v. F.J. Vollmer & Co., 1 F.3d 1511, 1522 (7th Cir. 1993);

- 9 -

then citing Virgin Islands v. Hercules, 875 F.2d 414, 419 (3d Cir. 1989); and then citing Miranda, 255 F.2d at 18).  Nor does the SEC take issue with this assessment of the state of our precedent as it stood as of the time of Ira Green.[3]

To be sure, under the "law of the circuit," we as a panel are not bound by our prior circuit precedent if "subsequent controlling authority" -- whether a decision of the United States Supreme Court, an en banc decision of our court, or a statute -- has directly "contradicted" it.  United States v. Barbosa, 896 F.3d 60, 74 (1st Cir. 2018).  But, the SEC has chosen not to argue that this precedent must be rethought given intervening Supreme Court caselaw.  Rather, it does no more than gesture at a suggestion that the Supreme Court's subsequent precedent does contradict our precedent insofar as that precedent holds that a violation of Criminal Rule 31(d)'s right to poll each juror individually is per se reversible error.

The government does so by pointing to Rivera v. Illinois, 556 U.S. 148 (2009), which holds that the denial of the right to exercise peremptory challenges is not per se reversible error but

---

[3] To the extent that, in its reply brief, the SEC attempts to recharacterize the "prevailing rule" as requiring per se reversal only where "the jury was not polled at all -- either individually or collectively," that argument, which was not presented in the SEC's opening brief, is waived. See United States v. Casey, 825 F.3d 1, 12 (1st Cir. 2016).

- 10 -

rather must be assessed for harmlessness. That mere gesturing is insufficient to lead us to reconsider Miranda.

The SEC acknowledges that the Supreme Court has recognized that some errors in the criminal context do "defy analysis by 'harmless-error' standards," Arizona v. Fulminante, 499 U.S. 279, 309 (1991) -- a class of errors that the Court has come to refer to as "structural errors," Weaver v. Massachusetts, 137 S. Ct. 1899, 1907-08 (2017). And, in the end, the SEC makes no argument that the error identified in Miranda is not of that "structural" kind, such that, in light of Rivera, our finding of per se reversible error in Miranda for a denial of the right that Criminal Rule 31(d) secures is no longer good law.

In fact, at oral argument, the SEC made clear that it was, for the purposes of this case, accepting as good law Miranda's treatment of the denial of the right to poll each juror individually under Criminal Rule 31(d) as per se reversible error, and separately arguing that we must nonetheless treat the violation of Civil Rule 48(c) that is at issue here differently. We therefore deem waived any argument that we should overturn Miranda's "per se reversible" holding, see United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990), and proceed to consider only the SEC's argument in this appeal -- that, notwithstanding Miranda, a district court's denial of Civil Rule 48(c)'s right to poll each juror individually must be assessed for harmlessness.

- 11 -

**B.**

The SEC emphasizes that the Supreme Court has never found a trial error in a civil case to be "structural." See Al Haramain Islamic Found., Inc. v. U.S. Dep't of Treasury, 686 F.3d 965, 988 (9th Cir. 2012). It also contends that we have treated the civil jury-polling right as non-constitutional, see Ira Green, 775 F.3d at 25, and that, even in the criminal context, the Court has never found a violation of a non-constitutional right to be "structural," while it has recognized that even "[m]ost constitutional errors" are not. Fulminante, 499 U.S. at 306. Thus, the SEC contends, the fact that Civil Rule 48(c) errors result in the denial of a non-constitutional right in a civil context provides strong reason to conclude that they cannot be per se reversible.

The SEC further adds that in a civil case the burden is on the party claiming an error to show that the error was not harmless, while in a criminal case the burden is on the government to show that it was, even when the error results in the denial of a non-constitutional right. See Shinseki v. Sanders, 556 U.S. 396, 410-11 (2009) (citing Palmer v. Hoffman, 318 U.S. 109, 116 (1943)). And, the SEC also points to the inherent differences between criminal and civil cases in terms of the higher stakes and the correspondingly higher burden of proof in the former. See Kotteakos v. United States, 328 U.S. 750, 762 (1946). In so doing,

the SEC challenges as mistaken our assumption in Ira Green that the two contexts should receive the same treatment.

In assessing the force of these contentions, however, we must keep in mind the state of our own precedent, as well as the text of the rules implicated in this case. And, we conclude that, in light of our precedent, we must reject the SEC's position, at least given the arguments that it has made to us as to why the error at issue here is not per se reversible.

**1.**

We begin with the text of each of the jury-polling rules at issue: Criminal Rule 31(d) and Civil Rule 48(c). As we noted in Ira Green, the rules are, textually, "virtually identical." 775 F.3d at 25. After all, Civil Rule 48(c) was "drawn from Criminal Rule 31(d)" with only "minor revisions to reflect Civil Rules Style and the parties' opportunity to stipulate to a nonunanimous verdict." Fed. R. Civ. P. 48(c) advisory committee's note to 2009 amendment. In fact, the advisory committee notes to Criminal Rule 31(d), in calling the rule "a restatement of existing law and practice," cited two cases for support, one of which was a federal civil case. Fed. R. Crim. P. 31(d) advisory committee's note to 1944 adoption (first citing Mackett v. United States, 90 F.2d 462, 465 (7th Cir. 1937); and then citing Bruce v. Chestnut Farms-Chevy Chase Dairy, 126 F.2d 224 (D.C. Cir. 1942)). Nor does

- 13 -

the SEC point to any textual difference between the two rules as a basis for its position.

We turn, then, to the text of the two harmless error rules, Criminal Rule 52(a) and Civil Rule 61. The SEC places significant emphasis on the portion of the text of Civil Rule 61 that provides that "the court must disregard all errors and defects that do not affect any party's substantial rights." Fed. R. Civ. P. 61 (emphases added). The SEC argues that because this "categorical mandate does not provide an exception for [Civil] Rule 48(c) errors," the text of Civil Rule 61 itself precludes treating such errors as per se reversible.

However, in making this argument, the SEC overlooks the fact that Criminal Rule 52(a), in a similarly categorical mandate, provides that "[a]ny error . . . that does not affect substantial rights must be disregarded." Fed. R. Crim. P. 52(a) (emphases added). Similarly, the harmless error statute -- which applies to both criminal and civil cases -- states that in "any appeal" regarding "any case," the court "shall give judgment after an examination of the record without regard to errors or defects which do not affect the substantial rights of the parties." 28 U.S.C. § 2111 (emphases added).

So, it is hard to see how the text of Civil Rule 61 that the SEC zeroes in on, standing alone, could provide a basis for its argument based on text. The SEC also acknowledges that

- 14 -

the Supreme Court has recognized that some errors it has recognized as structural errors "defy" harmless error review and are therefore per se reversible.  Fulminante, 499 U.S. at 309.

True, Civil Rule 61 and Criminal Rule 52(a) exhibit more textual variation than the two jury-polling rules.  But, the SEC has not identified how any of the differences between the two rules (such as using "any error" instead of "all errors") are material rather than stylistic.

**2.**

**a.**

Perhaps the SEC's strongest argument for its position is "the historic difference between how courts review errors in criminal and civil cases."  In that regard, it notes the higher stakes and correspondingly higher burden of proof in criminal cases, as well as the fact that, in civil cases, the burden is on the party complaining of error to show that the error was not harmless, whereas the burden is reversed in criminal cases.

This argument could be read as supporting the much broader notion that <u>no</u> federal civil trial error can be per se reversible, even though federal <u>criminal</u> trial errors can be.  And, indeed, in line with that logic, the SEC also attempts to argue that no civil trial errors are per se reversible.

This argument, however, runs headlong into another aspect of our own precedent, in which we treated the different

- 15 -

non-constitutional issue of a district court's permitting alternate jurors to participate in jury deliberations in a civil trial as per se reversible error.[4]  See Cabral v. Sullivan, 961 F.2d 998, 1003 (1st Cir. 1992).  In arriving at that conclusion in Cabral, moreover, we relied on cases involving Civil Rule 47(b)'s criminal analogue, Criminal Rule 24(c).  And, based on those cases, we explained that, because the two rules "literally read the same," we "[did] not believe the drafters meant for any variations in the interpretation of the[] two rules."  Id. at 1001 n.3.

Cabral is therefore in tension with the SEC's argument that this non-constitutional civil trial error cannot be per se reversible.  Cabral also supports Ira Green's observation that "[c]ommon sense suggests" that analogous civil and criminal rules "should be interpreted in pari passu" with regard to whether violations of those rules should be assessed for harmlessness. Ira Green, 775 F.3d at 25.

The SEC does argue in its reply brief that Cabral is no longer good law due to the Supreme Court's decision in United States v. Olano, 507 U.S. 725 (1993).  There, the Court held that a district court's permitting alternate jurors to sit in on jury deliberations did not warrant a new trial because it did not affect

---

[4]  Federal Rule of Civil Procedure 47(b) previously provided that "[a]n alternate juror who does not replace a regular juror shall be discharged after the jury retires to consider its verdict."  Cabral v. Sullivan, 961 F.2d 998, 1001 (1st Cir. 1992).

the substantial rights of the defendant, even though it violated Criminal Rule 24(c).  Id. at 739-41.

Our decision in United States v. Houlihan, 92 F.3d 1271 (1st Cir. 1996), again is in tension with the SEC's view.  Houlihan noted that the alternate jurors in Cabral actually participated in the deliberations, while in Olano they were instructed not to participate.  See id. at 1288 n.16.  Indeed, Cabral itself emphasized that the alternates had participated in the deliberations, while distinguishing earlier precedents in which the alternates had sat in on the deliberations but had not participated.  Cabral, 961 F.2d at 1001 nn.4-5; see also Manning v. Huffman, 269 F.3d 720, 725-26 (6th Cir. 2001); United States v. Ottersburg, 76 F.3d 137, 140 (7th Cir. 1996); United States v. Aguilar, 743 F.3d 1144, 1149-50 (8th Cir. 2014).  Meanwhile, Olano emphasized the lack of evidence in that case "that the alternate jurors . . . participated in the jury's deliberations" either "verbally or through 'body language.'"  507 U.S. at 739.

Indeed, the SEC itself turns out in the end to be a less stout defender of the contention that a civil trial error cannot be per se reversible.  At oral argument, it conceded that some errors that the Supreme Court has recognized as structural in the criminal context -- such as the right to an impartial judge, Fulminante, 499 U.S. at 309 (citing Tumey v. Ohio, 273 U.S. 510, 535 (1927)) -- might very well be per se reversible in the civil

context.  Cf. Caperton v. A.T. Massey Coal Co., 556 U.S. 868, 886-87 (2009) (reversing because a state justice's failure to recuse when a party had contributed $3 million to the justice's campaign created a "probability of actual bias ris[ing] to an unconstitutional level" under the Due Process Clause of the Fourteenth Amendment); id. at 898 (Roberts, C.J., dissenting) (questioning whether judge's erroneous failure to recuse should be assessed for harmlessness).  Thus, given that the SEC ultimately stops short of arguing that civil trial errors categorically cannot be per se reversible, and given that both we and other circuits currently recognize some civil trial errors as per se reversible, we fail to see how the SEC's arguments in this regard justify singling out jury-polling errors as meriting differential treatment in the criminal and civil contexts.

All that said, the SEC is right that, as we noted in Ira Green, several state courts treat jury-polling errors as per se reversible in the criminal context but not in the civil context.  Ira Green, 775 F.3d at 25 (citing Wiseman, 989 A.2d at 1038 & n.18 (collecting cases)).  In Wiseman, for example, the Connecticut Supreme Court acknowledged its precedent treating jury-polling errors as per se reversible in the criminal context.  989 A.2d at 1040 (citing State v. Pare, 755 A.2d 180, 194-96 (Conn. 2000)).  But, state court decisions are not a basis to depart from our precedent.  For the reasons we have explained, when we consider

the text of each of the relevant federal rules in light of Miranda and Ira Green, as well as Cabral and Houlihan, we see no basis for drawing the distinction that some state courts have drawn in interpreting their own state law rules.

**b.**

The SEC does make one additional argument for why Civil Rule 48(c) errors must be assessed for harmlessness. It proceeds as follows: Because courts review for harmlessness the denial of the right to a civil jury trial under the Seventh Amendment to the United States Constitution, courts must a fortiori also review for harmlessness any jury-related errors within a jury trial, including the failure to poll each of the jurors individually upon a party's request.

The SEC is right that both we and other circuits have held that a court's denial of the Seventh Amendment right to a civil jury trial is subject to harmless error analysis. See Frappier v. Countrywide Home Loans, Inc., 750 F.3d 91, 98 (1st Cir. 2014); see also SEC v. Jensen, 835 F.3d 1100, 1108-11 (9th Cir. 2016); 9 Charles Alan Wright & Arthur R. Miller, Fed. Prac. & Proc. § 2322 (4th ed. 2022). But, harmlessness review in these cases takes an unusual, narrow form: assessing whether the case "[]ever would have reached the jury." 9 Wright & Miller, supra, § 2322. In other words, denials of the right to a jury trial are harmless only in the "rare instances" in which the judge would

have been obliged to grant judgment as a matter of law before the case was even submitted to the jury.  Id.; see also Frappier, 750 F.3d at 98 (assessing if evidence met standard for directed verdict).  Otherwise, the error will be "presumed harmful" if there remain any questions that would have been left for the jury to decide, even if the evidence is otherwise overwhelming.  9 Wright & Miller, supra, § 2322.

The SEC has never, either in the District Court or on appeal, developed any argument for that prejudice standard (or even acknowledged its unusual nature) or claimed that the evidence in this case would satisfy it.[5]  Instead, the SEC has consistently argued for a different prejudice standard that places the burden on Sargent to show prejudice.  As a result, the SEC has waived any argument that this form of harmlessness review should apply, and we need not decide the issue.  See Zannino, 895 F.2d at 17.

We **affirm**.

---

[5] The SEC did not move for judgment as a matter of law in the District Court and makes no argument to us that it was entitled to such relief.  We also note that Sargent made two such motions, arguing that the evidence was insufficient to permit a reasonable jury to find against him.  Judge Young denied both motions.

- 20 -